No. 23-1617

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

SCOTT MACKEY,
*Plaintiff-Appellee,*

v.

PEOPLECONNECT, INC.,
*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Illinois, No. 1:22-cv-00342
Judge Virginia M. Kendall, Judge Presiding

## BRIEF AND REQUIRED SHORT APPENDIX
## OF DEFENDANT-APPELLANT PEOPLECONNECT, INC.

Michael T. Brody
  *Counsel of Record*
Debbie L. Berman
Wade A. Thomson
Clifford W. Berlow
Daniel R. Echeverri*
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
312-222-9350
mbrody@jenner.com

\* Admitted in the District of Columbia only.
Practicing under the supervision of members
of the Illinois Bar.

*Counsel for Defendant-Appellant PeopleConnect, Inc.*

**ORAL ARGUMENT REQUESTED**

<u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. <u>No. 23-1617</u>

Short Caption: <u>  Scott Mackey v. PeopleConnect, Inc.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[X]**    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  <u>PeopleConnect, Inc.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

  <u>Jenner & Block LLP</u>

(3)    If the party or amicus is a corporation:

    i)    Identify all of its parent corporations, if any; and
        <u>PeopleConnect is a wholly-owned subsidiary of PeopleConnect Holdings, Inc., a non-public Delaware corp.,</u>
        <u>and PCHI Parent, Inc., a non-public Delaware corporation.</u>

    ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:
        <u>No publicly held corporation owns 10% or more of PeopleConnect's stock.</u>

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2: <u>N/A</u>

Attorney's Signature <u>/s/ Michael T. Brody</u>        Date: <u> May 22, 2023</u>    (new)

Attorney's Printed Name: <u>Michael T. Brody</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes**    <u>  X  </u>
    **No**  <u>     </u>

Address:    <u>Jenner & Block LLP, 353 North Clark Street</u>
    <u>Chicago, IL 60654</u>

Phone Number: <u>(312) 923-2711</u>        Fax Number: <u>(312) 527-0484</u>

E-Mail Address: <u>mbrody@jenner.com</u>

rev. 12/19 AK

i

<u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. <u>No. 23-1617</u>

Short Caption: <u>Scott Mackey v. PeopleConnect, Inc.</u>

     To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

     The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[X]**    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    PeopleConnect, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

    Jenner & Block LLP

(3)    If the party or amicus is a corporation:

    i)     Identify all of its parent corporations, if any; and

        PeopleConnect is a wholly-owned subsidiary of PeopleConnect Holdings, Inc., a non-public Delaware corp., and PCHI Parent, Inc., a non-public Delaware corporation.

    ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:

        No publicly held corporation owns 10% or more of PeopleConnect's stock.

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2: <u>N/A</u>

Attorney's Signature <u>/s/ Debbie L. Berman</u>         Date: <u>May 22, 2023   (new)</u>

Attorney's Printed Name: <u>Debbie L. Berman</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** \
                                                        **No**    X

Address:    <u>Jenner & Block LLP, 353 North Clark Street</u> \
         <u>Chicago, IL 60654</u>

Phone Number: <u>(312) 923-2764</u>         Fax Number: <u>(312) 527-0484</u>

E-Mail Address: <u>dberman@jenner.com</u>

rev. 12/19 AK

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No. <u>No. 23-1617</u>

Short Caption: <u>Scott Mackey v. PeopleConnect, Inc.</u>

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

  **[X ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  <u>PeopleConnect, Inc.</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

  <u>Jenner & Block LLP</u>

(3) If the party or amicus is a corporation:

  i) Identify all of its parent corporations, if any; and
   <u>PeopleConnect is a wholly-owned subsidiary of PeopleConnect Holdings, Inc., a non-public Delaware corp., and PCHI Parent, Inc., a non-public Delaware corporation.</u>

  ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:
   <u>No publicly held corporation owns 10% or more of PeopleConnect's stock.</u>

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2: <u>N/A</u>

---

Attorney's Signature <u>/s/ Wade A. Thomson</u> Date: <u>May 22, 2023 (new)</u>

Attorney's Printed Name: <u>Wade A. Thomson</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** _____

   **No** <u> x </u>

Address:  <u>Jenner & Block LLP, 353 North Clark Street</u>
   <u>Chicago, IL 60654</u>

Phone Number: <u>(312) 840-8613</u> Fax Number: <u>(312) 527-0484</u>

E-Mail Address: <u>wthomson@jenner.com</u>

rev. 12/19 AK

<u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. <u>No. 23-1617</u>

Short Caption: <u>  Scott Mackey v. PeopleConnect, Inc.</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ X ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  <u>PeopleConnect, Inc.</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

  <u>Jenner & Block LLP</u>

(3) If the party or amicus is a corporation:

  i)  Identify all of its parent corporations, if any; and
    <u>PeopleConnect is a wholly-owned subsidiary of PeopleConnect Holdings, Inc., a non-public Delaware corp.,</u>
    <u>and PCHI Parent, Inc., a non-public Delaware corporation.</u>

  ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:
    <u>No publicly held corporation owns 10% or more of PeopleConnect's stock.</u>

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2: <u>N/A</u>

Attorney's Signature <u>/s/ Clifford W. Berlow</u>   Date: <u>May 22, 2023</u> (new)

Attorney's Printed Name: <u>Clifford W. Berlow</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes**
                         **No** <u> x </u>
Address: <u>Jenner & Block LLP, 353 North Clark Street</u>
    <u>Chicago, IL 60654</u>

Phone Number: <u>(312) 840-7366</u>      Fax Number: <u>(312) 527-0484</u>

E-Mail Address: <u>cberlow@jenner.com</u>

                            rev. 12/19 AK

<u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. <u>No. 23-1617</u>

Short Caption: <u> Scott Mackey v. PeopleConnect, Inc.</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

  **[ ]  PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  <u>PeopleConnect, Inc.</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

  <u>Jenner & Block LLP</u>

(3)  If the party or amicus is a corporation:

  i)  Identify all of its parent corporations, if any; and
    <u>PeopleConnect is a wholly-owned subsidiary of PeopleConnect Holdings, Inc., a non-public Delaware corp.,</u>
    <u>and PCHI Parent, Inc., a non-public Delaware corporation.</u>

  ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:
    <u>No publicly held corporation owns 10% or more of PeopleConnect's stock.</u>

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2: <u>N/A</u>

Attorney's Signature <u>/s/ Daniel R. Echeverri</u>    Date: <u>May 22, 2023</u>

Attorney's Printed Name: <u>Daniel R. Echeverri</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** <u>  </u>
                                **No** <u> x </u>

Address:  <u>Jenner & Block LLP, 353 North Clark Street</u>
     <u>Chicago, IL 60654</u>

Phone Number: <u>(312) 840-7366</u>      Fax Number: <u>(312) 527-0484</u>

E-Mail Address: <u>decheverri@jenner.com</u>

rev. 12/19 AK

## TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENTS ........................................................... i

TABLE OF AUTHORITIES .............................................................................viii

INTRODUCTION................................................................................................ 1

JURISDICTIONAL STATEMENT...................................................................... 2

ISSUES PRESENTED FOR REVIEW ............................................................... 4

STATEMENT OF THE CASE ............................................................................ 4

    A. Classmates.com............................................................................... 4

    B. Visitors ............................................................................................ 5

    C. Classmates.com Terms Of Service................................................. 9

    D. Classmates.com Free Members ................................................... 10

    E. Plaintiff's Complaint .................................................................... 15

    F. Proceedings Below ....................................................................... 16

STANDARD OF REVIEW ............................................................................... 19

SUMMARY OF ARGUMENT ......................................................................... 20

ARGUMENT .................................................................................................... 22

I.  THE DISTRICT COURT ERRED IN DENYING THE MOTION TO COMPEL
    ARBITRATION WITHOUT PERMITTING ARBITRATION-RELATED
    DISCOVERY. ........................................................................................... 22

    A. Discovery Is Necessary Where The Existence Of A Binding
      Agreement To Arbitrate Presents Disputes Of Material Fact................. 22

    B. Whether Plaintiff Is Bound By The Arbitration Clause Involves
      Disputed Issues Of Fact....................................................................... 25

      1. A Client Is Bound By Actions Of His Attorney That He
        Authorizes Or Ratifies. .................................................................. 26

      2. Whether Plaintiff Authorized Or Ratified His Counsel's Actions
        Depends On Disputed Questions Of Fact. ...................................... 28

a.  There Is A Material Dispute Of Fact Regarding Who Searched For Plaintiff On Classmates.com.................................................. 28

b.  There Is A Material Dispute Of Fact Regarding Plaintiff's Knowledge Of The Arbitration Agreement.................................... 31

C.  The Court Should Reverse And Remand For Limited Discovery Into Whether Plaintiff Authorized His Attorney To Agree To The Terms Of Service Or Ratified That Action......................................... 34

II.  PLAINTIFF FAILS TO STATE A CLAIM BECAUSE PEOPLECONNECT'S ALLEGED USE OF HIS NAME OR LIKENESS WAS INCIDENTAL. ............. 35

A.  The District Court Erred In Failing To Decide Whether The Incidental Use Doctrine Exists In Illinois............................... 36

B.  Illinois Courts Will Apply The Common Law Incidental Use Doctrine To IRPA. ............................................................ 38

C.  Plaintiff Pleads An Incidental Use Of His Identity. ............................... 40

III. BECAUSE PLAINTIFF FAILS TO PLEAD HIS LIKENESS WAS DISPLAYED IN ILLINOIS, THE ALLEGED EXTRATERRITORIAL IRPA CLAIM IS NOT ACTIONABLE. ...................................................... 43

A.  Illinois Does Not Apply Its Laws Extraterritorially Unless Explicitly Stated.................................................................. 44

B.  To State An IRPA Claim, Plaintiff Must Allege Publication Or Display Of His Name Or Likeness In Illinois. ........................................ 46

C.  Plaintiff's IRPA Claim Is Defective Because He Does Not Allege Publication Or Display In Illinois. ........................................ 49

CONCLUSION ............................................................. 50

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aligo v. Time-Life Books, Inc.*,
No. C 94-20707, 1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ................39–40

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006) ................................................................... 41

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ...................................................................................... 26

*Asher v. Baxter Int'l Inc.*,
505 F.3d 736 (7th Cir. 2007) ......................................................................... 3

*Athanas v. City of Lake Forest*,
276 Ill. App. 3d 48 (2d Dist. 1995) ............................................................. 27

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) ............................................................44, 45, 48, 49

*Berkos v. National Broadcasting Co.*,
161 Ill. App. 3d 476 (1st Dist. 1987) ..................................................... 38, 39

*Bonilla v. PeopleConnect, Inc.*,
No. 21-CV-00051 (N.D. Ill. Mar. 29, 2022), ECF No. 74 ....................... 24, 25

*Brill v. Countrywide Home Loans, Inc.*,
427 F.3d 446 (7th Cir. 2005) ....................................................................... 36

*Brown v. ACMI Pop Div.*,
375 Ill. App. 3d 276 (1st Dist. 2007) ........................................................... 38

*Com. Underwriters Ins. Co. v. Aires Env't Servs., Ltd.*,
259 F.3d 792 (7th Cir. 2001) ....................................................................... 34

*Continental Vineyard, LLC v. Vinifera Wine Co.*,
973 F.3d 747 (7th Cir. 2020) ....................................................................... 37

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) ........................................................................ 42

*Deputy v. Lehman Bros., Inc.*,
345 F.3d 494 (7th Cir. 2003) ....................................................................... 19

*Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.,*
  800 F.3d 853 (7th Cir. 2015) ..................................................... 26

*Durukan Am., LLC v. Rain Trading, Inc.,*
  787 F.3d 1161 (7th Cir. 2015) ................................................... 35

*Dwyer v. Am. Exp. Co.,*
  273 Ill. App. 3d 742 (1st Dist. 1995) ......................................... 38

*Faulkenberg v. CB Tax Franchise Sys., LP,*
  637 F.3d 801 (7th Cir. 2011) ....................................................... 5

*First Options of Chi., Inc. v. Kaplan,*
  514 U.S. 938 (1995) ................................................................. 26

*Fischer v. Instant Checkmate LLC,*
  No. 19 C 4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ................... 47–48

*Flanagan v. Allstate Ins. Co.,*
  242 F.R.D. 421 (N.D. Ill.), *modified on other grounds*, 242 F.R.D.
  434 (N.D. Ill. 2007) ................................................................ 36

*Goplin v. WeConnect, Inc.,*
  893 F.3d 488 (7th Cir. 2018) ..................................................... 20

*Guidotti v. Legal Helpers Debt Resol., L.L.C.,*
  716 F.3d 764 (3d Cir. 2013) ........................................... 22, 23, 24

*Hansen v. LMB Mortg. Servs., Inc.,*
  1 F.4th 667 (9th Cir. 2021) ............................................ 22, 23, 34

*Harvey v. Sys. Effect, LLC,*
  154 N.E.3d 293 (Ohio Ct. App. 2020) ........................................ 40

*Horwitz v. Holabird & Root,*
  212 Ill. 2d 1 (2004) ................................................................ 26

*Howard v. Ferrellgas Partners, L.P.,*
  748 F.3d 975 (10th Cir. 2014) ............................................. 23, 34

*Huston v. Hearst Commc'ns, Inc.,*
  53 F.4th 1097 (7th Cir. 2022) ...........................20, 21, 46, 47, 48

*Jin v. Parsons Corp.,*
  966 F.3d 821 (D.C. Cir. 2020) ............................................ 23, 34

*Johnson v. Harcourt, Brace, Jovanovich, Inc.,*
  43 Cal. App. 3d 880 (1974) ..................................................... 40

ix

*Knapke v. PeopleConnect, Inc.*,
  38 F.4th 824 (9th Cir. 2022) ....................................................... 23, 24, 33

*Langan v. Rasmussen*,
  No. 15-cv-01285, 2018 WL 4148842 (C.D. Ill. Aug. 30, 2018) .................... 27

*Leopold v. Levin*,
  45 Ill. 2d 434 (1970) ................................................................. 38

*Marbury v. Madison*,
  1 Cranch 137 (1803) ................................................................. 37

*Marks v. Elephant Walk, Inc.*,
  156 A.D.2d 432 (N.Y. App. Div. 1989) ......................................... 39

*McCready v. eBay, Inc.*,
  453 F.3d 882 (7th Cir. 2006) ..................................................... 20

*McGoveran v. Amazon Web Services, Inc.*,
  CA. No. 20-1399, 2021 WL 4502089 (D. Del. Sept. 30, 2021) ................... 45

*Orgone Cap. III, LLC v. Daubenspeck*,
  912 F.3d 1039 (7th Cir. 2019) .............................................. 5, 20

*Paulsen v. Abbott Lab'ys*,
  39 F.4th 473 (7th Cir. 2022) ..................................................... 26

*People v. Spivey*,
  2017 IL App (2d) 140941 ............................................................ 26

*Phillips v. City of Belleville*,
  2014 IL App (5th) 130268-U ......................................................... 27

*Progress Printing Corp. v. Jane Byrne Pol. Comm.*,
  235 Ill. App. 3d 292 (1st Dist. 1992) ........................................... 27

*Rutledge v. Scott Chotin, Inc.*,
  972 F.2d 820 (7th Cir. 1992) ..................................................... 36

*Schifano v. Greene Cnty. Greyhound Park, Inc.*,
  624 So. 2d 178 (Ala. 1993) ....................................................... 40

*In re Schwartz*,
  799 F.3d 760 (7th Cir. 2015) ..................................................... 39

*Staruski v. Cont'l Tel. Co. of Vt.*,
  581 A.2d 266 (Vt. 1990) ........................................................... 40

*In re Sterling,*
    933 F.3d 828, 833 (7th Cir. 2019) ........................................................ 26–27

*Trannel v. Prairie Ridge Media, Inc.,*
    2013 IL App (2d) 120725 .................................................................... 38, 47

*Trs. of Ind. Univ. v. Curry,*
    918 F.3d 537 (7th Cir. 2019) ................................................................... 37

*United States Board of Oral Implantology v. Am. Board of Dental Specialties,*
    390 F. Supp. 3d 892 (N.D. Ill. 2019) ............................................ 44–45, 48

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
    *Workers Int'l Union v. Trimas Corp.,*
    531 F.3d 531 (7th Cir. 2008) ................................................................... 22

*Vulcan Golf, LLC v. Google Inc.,*
    552 F. Supp. 2d 752 (N.D. Ill. 2008) ....................................................... 44

*Zahn v. N. Am. Power & Gas, LLC,*
    815 F.3d 1082 (7th Cir. 2016) ................................................................. 36

*Zeman v. Alvarez Diaz,*
    2021 IL App (1st) 200797 ......................................................................... 27

**STATUTES AND RULES**

9 U.S.C. § 2 ................................................................................................ 22

9 U.S.C. § 4 ............................................................................................ 3, 23

9 U.S.C. § 16(a) ........................................................................................... 3

28 U.S.C. § 1332(d)(2) ................................................................................. 2

765 ILCS 1075/5 ........................................................................................ 46

765 ILCS 1075/10 ...................................................................................... 48

765 ILCS 1075/30(a) ............................................................................ 43, 46

765 ILCS 1075/35(b)(2) ............................................................................. 39

Fed. R. Civ. P. 12(b) ............................................................................. 3, 20

**OTHER AUTHORITIES**

HB 442, 90th Gen. Assemb., 49th House Proceedings,
Tr. of House Debate (Ill. Apr. 24, 1997)................................................39, 45, 48

2 J. Thomas McCarthy et al., *The Rights of Publicity & Privacy*, § 7:20,
Westlaw (2d ed. database updated May 2023) ............................................... 40

*Restatement (Second) of Torts*, § 652C (1977) .................................................. 38

## INTRODUCTION

This interlocutory appeal requests the Court to correct several clear errors that have permitted this case to proceed in the wrong forum on an erroneous theory of law.

PeopleConnect, Inc. ("PeopleConnect") hosts Classmates.com, a website on which individuals can review a library of over 400,000 school yearbooks. To access certain parts of the website, such as the yearbooks, users must register to create free accounts. They may separately choose to pay a subscription fee to access additional features unrelated to yearbook access. All registered (free and paying) users of PeopleConnect's services agree to arbitrate their disputes with PeopleConnect.

Plaintiff contends Classmates.com violates the Illinois Right of Publicity Act by displaying yearbook photos of Illinois residents in connection with an invitation to Visitors to become Free Members, and if a Visitor becomes a Free Member, then an invitation on another webpage to subscribe—a claim PeopleConnect disputes. Before preparing the complaint in this case, Plaintiff's counsel accessed the website and accepted PeopleConnect's Terms of Service, including its arbitration clause. Counsel then used the fruits of those efforts in the complaint and in the motion practice that followed, and Plaintiff accepted the benefits of their use.

Discovery is needed to decide whether this dispute should be arbitrated. While the existing record does not show that Plaintiff accepted the Terms of Service himself (though he may have), the current record does show that his

lawyers have done that for him. An agent can agree to arbitrate on behalf of its principal, and that is what the facts demonstrate here. In its motion PeopleConnect submitted evidence to show that Plaintiff ratified his agents' conduct by accepting the benefits of their use of the website. Plaintiff disputed those facts in his opposition. Instead of permitting discovery to address the inconsistencies in the declarations submitted by Plaintiff and his counsel, the district court accepted Plaintiff's version of disputed material facts. That was error.

In the same Memorandum Opinion & Order, and therefore also reviewable here, the district court also made substantive errors, two of which PeopleConnect raises in this appeal. First, it declined to apply the "incidental use" exception to publicity claims. It stated that because Illinois courts have not yet had the occasion to apply that exception, it did not exist. Yet a federal court sitting in diversity is required to predict how the state courts will resolve an issue, and there is plenty of guidance—beginning with the common law on which the statutory claim is based—supporting the application of the incidental use doctrine here. Second, the district court applied the Illinois statute to claims that do not arise in Illinois, an extraterritorial step that Illinois law does not allow. Left uncorrected, these errors expand this case far beyond its proper limits.

## JURISDICTIONAL STATEMENT

*District Court Jurisdiction.* The district court had jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiff Scott Mackey, a natural person, is a citizen of Illinois. Dkt. 1 ¶33. PeopleConnect is a citizen of

Delaware (its place of incorporation) and Washington State (its principal place of business). *Id.* ¶32. In his putative class action complaint, Plaintiff seeks to represent a class of "current and former Illinois residents who are not subscribers of Classmates.com and whose names, photographs, and/or personal information PeopleConnect extracted from yearbooks and incorporated into the yearbook database PeopleConnect uses to promote Classmates.com subscriptions," Dkt. 1 ¶65, of which he is a member. Among other relief, Plaintiff seeks statutory damages of $1,000 per class member. The amount in controversy exceeds $5,000,000. *Id.* ¶23.

*Appellate Jurisdiction.* The district court issued its order denying PeopleConnect's motion seeking to compel arbitration pursuant to 9 U.S.C. § 4 and to dismiss under Federal Rule of Civil Procedure 12(b)(3) and (b)(6) on March 17, 2023. Dkt. 76.[1] The denial of PeopleConnect's arbitration request is an appealable order. 9 U.S.C. § 16(a). PeopleConnect timely filed its notice of appeal on March 29, 2023. Dkt. 78. This Court has jurisdiction to review the district court's order under 9 U.S.C. § 16(a)(1)(A) and (B). This Court's jurisdiction includes the power to review all issues within the four corners of the district court's order. *Asher v. Baxter Int'l Inc.*, 505 F.3d 736, 740 (7th Cir. 2007) ("Any appeal presents *the order* for appellate decision, and a court of appeals is free to

---

[1] Citations to the district court's Memorandum Opinion & Order included in the required short appendix appear as "A_."

3

address all considerations that make the order sound or erroneous." (citing *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 204–05 (1996)).

## ISSUES PRESENTED FOR REVIEW

1. Did the district court err in failing to order discovery regarding the existence of an arbitration agreement between PeopleConnect and Plaintiff when factual disputes exist as to the formation of an arbitration agreement and PeopleConnect was unable to test Plaintiff's self-serving declarations?

2. Does Illinois recognize the "incidental use" doctrine as a defense to claims under the Illinois Right of Publicity Act—as do the majority of states that recognize right of publicity claims—and does that defense defeat Plaintiff's claims?

3. May a plaintiff state a claim under the Illinois Right of Publicity Act when he fails to allege his name or likeness was ever displayed anywhere, let alone in Illinois?

## STATEMENT OF THE CASE

### A.  Classmates.com

PeopleConnect owns and operates the Classmates.com website. Dkt. 1 ¶1. Founded in 1995, Classmates.com offers an online library of over 400,000 school yearbooks, making it a preeminent library of school yearbooks on the internet. *Id.* ¶23; *see* Dkt. 45-1 ("McGuane Decl.") ¶2.[2] Users can access aspects of the yearbook collection at Classmates.com. *See* Dkt. 1 ¶6.

---

[2] In the district court, PeopleConnect submitted the declaration of Tara McGuane, its Associate Director of Compliance and Intellectual Property, to explain how individuals most commonly interact with Classmates.com and to

A user of the website begins a visit to the website at www.classmates.com, the initial landing page. From there, a user can navigate to a State, then a locality, and ultimately to a school and then register for a free account. A user also can review yearbooks of that school in the Classmates.com library.

What portions of a yearbook an individual can access on Classmates.com depends on whether that individual is an unregistered user (a "Visitor"); a registered user who has not paid for a subscription (a "Free Member"); or a paid subscriber (a "Paid Member"). *See* Dkt. 45-1 ¶¶4, 6–10.

**B.     Visitors**

A Visitor is an individual who has not registered for an account on Classmates.com. *See id.* ¶4. A Visitor can navigate to yearbooks from the Classmates.com homepage. *Id.* ¶¶7, 12. Often, a Visitor will click on a state, city, and then a school name. *See id.* ¶12; *see also id.* Ex. 1 at 1–6. After doing so, Classmates.com will display information about the selected school, including thumbnails of yearbooks that are included in the Classmates.com library. Dkt. 45-1, Ex. 1 at 31. (A thumbnail is a preview of a yearbook page that has been greatly reduced in size and displayed in low resolution compared to its original format. *See infra* at 6).

---

illustrate the flow of the website. *See generally* Dkt. 45-1, Ex. 1. This information may be considered by the Court in assessing the motion to compel arbitration, *see Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011), and regarding the motion to dismiss, *see Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).



## Yearbooks



## Photo Albums



## Recently Joined Members

## Reunions & Events



## Alumni List

Dkt. 45-1, Ex. 1 at 7. A Visitor can, but is not required to, select a yearbook to see images of the first few pages of the yearbook, typically the first five pages or so (plus the cover) of that yearbook:



*Id.* at 33–37. After those first few pages, a Visitor can scroll through the yearbook, but the Visitor can only view small, low-resolution thumbnail images of two-page spreads of the rest of the yearbook. *Id.* at 39. The following screenshot demonstrates that the website might display thumbnails of 24 pages from a particular yearbook in the library:



*Id.* If a Visitor attempts to view full size images of those remaining pages, a pop-up box appears that informs the Visitor that to view full-size pages of the remainder of the yearbook, the Visitor must register for a free membership:



*Id.* at 38. The pop-up page partially obscures the images and contains no photographs or names of anyone, let alone the individuals displayed in the yearbook. *See id.*

### C.     Classmates.com Terms Of Service

To register and become a Free Member, the Visitor is required to accept PeopleConnect's Terms of Service. Dkt. 45-1 ¶21; *see generally id.*, Ex. 1 at 1–6, 33–39. While filling out the pop-up screen, Visitors are advised that: "By clicking Submit, you agree to the Classmates Terms of Service and Privacy Policy." Dkt. 45-1 ¶13; *id.*, Ex. 1 at 38. The Terms of Service are hyperlinked to that message. *Id.* A Visitor who completes the pop-up screen and clicks "Submit" becomes a Free Member. *See* Dkt. 45-1 ¶¶13, 20–21.

A Free Member who accesses Classmates.com and its services for the Member's own use agrees to these Terms of Service. *Id.*, Ex. 2 at 1. And when the Free Member accesses the website "on behalf of or for the benefit of another" and has the authority to do so, the Member also agrees to the Terms of Service on that person's behalf. *Id.* In addition, each time a Free Member uses the website, the Member reaffirms acceptance of the Terms of Service. *See id.*

The Terms of Service contain an arbitration provision under which the parties agree all disputes between them are to be resolved exclusively through binding arbitration. *Id.*, Ex. 2 § 12. The Terms of Service provide that any arbitration "will be governed by the Consumer Arbitration Rules of the American Arbitration Association ('AAA')." *Id.* § 12(B)(1).

A Free Member can opt out of the arbitration provision by sending a written notice to do so within thirty days of the Member's first use of Classmates.com. *Id.* § 12(D). To opt out on behalf of another, the Free Member must provide that person's name, address, phone number, email addresses, and signature. *Id.*

### D.     Classmates.com Free Members

After Visitors register and become Free Members, they are shown a confirmation of their registration. *Id.*, Ex. 1 at 12. On that confirmation page, they also receive an offer to upgrade to become a Paid Member:



*Id.* If the Free Member chooses to subscribe and become a Paid Member, the Member will not see any more offers to subscribe. Free Members may also click the "No thanks" button at the top right of this screen to remain Free Members. This confirmation screen is a new, separate page that is not overlayed on top of any yearbook pages and does not include any names or photographs from any yearbook. The only name it includes is the Free Member's (here, Tara). *Id.*

As Free Members, they remain able to browse or search the entire digital library of high-resolution images. When a Free Member later logs into an account, the Member is directed to the landing page for Members. *Id.* at 9. On the right side of this page is what Plaintiff calls a "banner ad." *Id.*; *see also* Dkt. 1 ¶55. The banner ad is displayed even if the Free Member has not conducted a search.



As shown, the banner ad includes additional details, including advertisements by third parties and information regarding useful functions of a Classmates.com

membership. (In the example shown on the previous page, the banner ad contains an ad for Aetna Medicare Solutions and an offer of a Classmates.com's subscription, though offers to Classmate.com subscriptions are not always displayed.)

From the Member landing page, the Member, in addition to other functions, can enter queries into a search bar for a specific person or yearbook.



Dkt. 45-1, Ex. 1 at 22. On the right side of the search results screen is another set of "banner ads." *See id.* Some, but not all, "banner ads" shown to a Free

Member may include text describing the benefits of upgrading to a paid subscription and an "Upgrade now" button for users who wish to do so. The content of the banner ad is not dependent on whether a search was performed or what was searched.



*Id.* at 14. No matter what is displayed on the right side of the page, the only name ever displayed there is that of the Member (here, Tara), not the name of any person who may have been searched. *See id.*; *see supra* at 13–14. Paid Members are not shown ads inviting them to join PeopleConnect's subscription service. *See* Dkt. 45-1 ¶8.

### E.     Plaintiff's Complaint

On January 20, 2022, Plaintiff filed a two-count putative class action complaint against PeopleConnect. Dkt 1. Plaintiff alleged PeopleConnect unlawfully appropriated his likeness by displaying excerpts of school yearbooks that present his name and photographs on Classmates.com in proximity to offers for paid subscriptions. *Id.* ¶¶5–9, 11. Plaintiff alleged these acts violated his right under the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq.*, and unjustly enriched PeopleConnect under Illinois common law.[3] Dkt. 1 ¶¶1, 21–22, 67(a)–(c), 73–86.

The complaint also describes related litigation—including a previously-filed class action complaint in the Northern District of Illinois, *Bonilla v. PeopleConnect, Inc.*, No. 21-CV-0051, of which Plaintiff is also a class member—and PeopleConnect's position regarding arbitration. Dkt. 1 ¶¶36–45. Plaintiff alleged that as part of an effort to avoid a potential argument about arbitration, "[his] counsel prepared this complaint without including screenshots from the

---

[3] Because the unjust enrichment claim seeks relief on the same facts and legal theory as asserted in the IRPA claim, dismissal of the IRPA claim would result in the dismissal of the unjust enrichment claim.

Classmates.com website. Instead, Plaintiffs allege on information and belief that Plaintiffs' photographs appear on the Classmates.com website." *Id.* ¶40. He further claimed he would file an amended complaint with screenshots that his counsel collected, but only if PeopleConnect stipulated that his "counsel's visiting the website to investigate Plaintiffs' claims and including screenshots in the Complaint does not constitute an agreement to arbitrate and does not waive any of Plaintiff's rights." *Id.* ¶41.

Plaintiff attached to his complaint a pre-suit letter his counsel sent to PeopleConnect's counsel, in which his counsel claimed that Plaintiff did not "consent to" arbitrate his claims, he "did not authorize his counsel" to agree to arbitrate, and asked PeopleConnect to agree with this position. *Id.* ¶¶42–43; *see* Dkt. 1-3. In an email that also is attached to the complaint, PeopleConnect rejected Plaintiff's contentions and reaffirmed the position it stated in other related litigation that Plaintiff was bound by his counsel's agreement to arbitrate. Dkt. 1 ¶44; Dkt. 1-4.

### F.    Proceedings Below

PeopleConnect filed a motion to compel arbitration and in the alternative to dismiss the complaint ("Motion"). Dkts. 44; 45. In its Motion, PeopleConnect argued, among other issues, three points.

First, PeopleConnect argued that Plaintiff was bound to arbitrate his claims because he ratified the assent of his counsel, Benjamin Osborn, to the Terms of Service, which included an arbitration provision. Dkt. 45 at 4–12. Alternatively, PeopleConnect contended it should be able to conduct discovery

on this issue to the extent there were any disputes of fact regarding the existence of the arbitration agreement and who was bound by it. *Id.* at 13. In support of this Motion, PeopleConnect demonstrated that its records showed someone used the Classmates.com website to search for Plaintiff on January 5, 2022. Dkt. 45-1 ¶24. PeopleConnect's records also showed that Mr. Osborn created a Classmates account on August 25, 2019, and then created at least five more accounts, including one as recently as October 28, 2021. *Id.* ¶¶26, 28–33. Given how many accounts Mr. Osborn created using alternate names and/or emails, PeopleConnect explained that "it is possible that Mr. Osborn created more than these five accounts" in addition to his original account. *Id.* ¶28. PeopleConnect argued it should proceed to discovery to determine what actions Mr. Osborn had taken on Classmates.com to prepare and bolster Plaintiff's claims and what Plaintiff himself did to ratify Mr. Osborn's conduct. Dkt. 45 at 8–13.

Second, PeopleConnect argued that if the matter were to remain in court, rather than arbitration, the complaint was defective because any use of Plaintiff's name or likeness was "incidental" to the alleged advertisements. *Id.* at 21–22.

Third, PeopleConnect argued that Plaintiff failed to state a claim because he sought to apply IRPA extraterritorially in contravention to Illinois law. *Id.* at 16–17.

In opposition to the Motion, Plaintiff submitted declarations from himself and two of his attorneys, Mr. Osborn and Samuel Strauss. *See* Dkt. 53. In his declaration, Plaintiff stated that he did not even know that PeopleConnect's Terms of Service existed, that Mr. Osborn had created an account and used it to

17

search for Plaintiff, or that Mr. Osborn agreed to the Terms of Service. Dkt. 54 ("Mackey Decl.") ¶¶8–10. He also averred that he never agreed to arbitrate his claims and did not authorize Mr. Osborn to agree to arbitrate his claims. *Id.* ¶¶13, 16. In his declaration, Mr. Osborn stated he never searched for Plaintiff on Classmates.com. Dkt. 55 ("Osborn Decl.") ¶7. Mr. Strauss averred that he had directed an unnamed non-attorney employee of his firm to search for Plaintiff on portions of the website that did not require her to create an account. Dkt. 56 ("Strauss Decl.") ¶¶6–7.

In reply, PeopleConnect noted that Mr. Osborn's and Mr. Strauss's declarations contradicted Plaintiff's counsel's repeated statements in the past regarding who searched for Plaintiff on Classmates.com. Dkt. 57 at 1–2. PeopleConnect also pointed out the hearsay nature of Mr. Strauss's declaration and argued that even considering any or all of these declarations, Plaintiff at most created only a dispute of material fact that could not defeat the Motion at this stage. *See id.* at 3–4, 8–9.

The district court denied PeopleConnect's Motion. A1–32. *First,* the district court found that the declarations were sufficient to decide all issues of fact and that it "need[ed] no additional evidence" to reject PeopleConnect's ratification argument. A13. Based on Plaintiff's declarations, the district court accepted as "plausible" Plaintiff's assertions that Mr. Osborn did not search for Plaintiff and instead a non-attorney did so using the Visitor portions of the Classmates.com website. A9–10. The district court further found that Plaintiff "never knew any arbitration agreement had existed between PeopleConnect and [Mr.] Osborn

before filing his lawsuit" and that the complaint and the pre-suit letter did not provide him with any information about the arbitration agreement because they make no reference to Mr. Osborn's personal Classmates account. A12. The district court further found that Plaintiff "showed no intent to be bound by any arbitration provision" and "repudiated this agreement and averred that he never authorized his counsel to arbitrate his claims." A13.

*Second*, the district court refused to determine whether Illinois recognizes an "incidental use" exception to IRPA. A22. The district court concluded that because "the Illinois Supreme Court has not adopted the incidental-use exception," it would not apply the exception. *Id.*

*Third*, the district court concluded that Plaintiff's claims were not extraterritorial applications of Illinois law. A16–18. The court applied IRPA even though Plaintiff did not allege his likeness was displayed in Illinois. To the district court, IRPA does not require that a third party be able to view Plaintiff's name or likeness at all, let alone in Illinois. A17. It is enough that Plaintiff is an Illinois resident and that Classmates.com, an internet website available across the nation, is viewable in Illinois. *Id.*

## STANDARD OF REVIEW

A district court's denial of a request for arbitration-related discovery is reviewed for an abuse of discretion. *See Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 511 (7th Cir. 2003). This Court reviews dispositions of motions to dismiss

brought pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo. Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022) (citation omitted).[4]

## SUMMARY OF ARGUMENT

In this appeal, PeopleConnect raises three critical errors made by the district court in denying PeopleConnect's Motion.

*First*, the district court denied PeopleConnect's Motion without permitting discovery into Plaintiff's factual assertions that he did not authorize or ratify his counsel's agreement to arbitrate. The district court took Plaintiff's word that a non-attorney staff member of one of Plaintiff's attorneys' firms conducted the search and only used the Visitor portions of the website. That was error.

There are several disputed issues of fact that necessitate discovery. From the filing of the complaint to the denial of the Motion, Plaintiff's version of the events has changed. The district court should not have blindly accepted Plaintiff's current position. PeopleConnect is entitled to examine and test these factual contentions through discovery.

---

[4] In assessing legal defects in the complaint, the Court may review the complaint, materials incorporated by reference, and other materials of which this Court may take judicial notice. *See Orgone*, 912 F.3d at 1044. The Court may consider the entirety of Classmates.com's website at the motion to dismiss stage because its layout is referenced and central to Plaintiff's complaint. *See McCready v. eBay, Inc.*, 453 F.3d 882, 891–92 (7th Cir. 2006) (considering subpoena at motion to dismiss because "[t]he heart of [plaintiff's] lawsuit is based upon the subpoena"). Alternatively, the Court may take judicial notice of Classmates.com because the parties referred to it in the briefing below. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (citations in underlying briefing sufficient to take judicial notice of website).

*Second*, the incidental use doctrine bars Plaintiff's claims. The common law has long recognized that doctrine, which provides that the incidental use of a person's name or identity in a commercial communication does not create liability. Although IRPA is intended to codify the common law, the district court refused to consider this exception because the Illinois Supreme Court has not yet addressed whether the exception applies to IRPA as it did to its common law predecessor. But it was the district court's duty to predict what it expects the Illinois Supreme Court will decide, not to wait until some other case presents and conclusively resolves the issue. The incidental use doctrine comports with IRPA's text and purpose, and it bars Plaintiff's claims.

*Third*, ignoring guidance from the Illinois courts and this Court, the district court improperly expanded the scope of IRPA to include conduct occurring elsewhere. The district court determined that internet searches occur everywhere, and, therefore, an Illinois plaintiff may sue in Illinois based solely on their residence. The district court based its conclusion on its erroneous view that display is not an element of an IRPA claim, but this Court made clear in *Huston v. Hearst Communications, Inc.*, 53 F.4th 1097 (7th Cir. 2022), that the district court's analysis on this point is incorrect. Because Plaintiff failed to allege his name or likeness on Classmates.com was ever displayed to any person in Illinois, he cannot state an IRPA claim.

**ARGUMENT**

I.  **THE DISTRICT COURT ERRED IN DENYING THE MOTION TO COMPEL ARBITRATION WITHOUT PERMITTING ARBITRATION-RELATED DISCOVERY.**

Under the Federal Arbitration Act ("FAA"), agreements to arbitrate, like the one here, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To decide whether the parties agreed to arbitrate, courts often must decide questions of contract formation. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Trimas Corp.*, 531 F.3d 531, 535 (7th Cir. 2008) (citation omitted). "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause,'" a court may easily grant the motion. *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted). But when the plaintiff disputes that conclusion, the parties should conduct discovery before a court decides the motion. *Id.* Here, the district court erred by improperly resolving factual disputes relevant to the formation of an arbitration contract without holding the motion in abeyance, ordering discovery, and then, if necessary, proceeding to a trial on this specific issue. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021).

A.  **Discovery Is Necessary Where The Existence Of A Binding Agreement To Arbitrate Presents Disputes Of Material Fact.**

Because disputes over contract formation are often fact-intensive, "a court is not authorized to dispose of a motion to compel arbitration until *after* factual

disputes have been resolved." *Hansen*, 1 F.4th at 671 (emphasis added). The FAA itself requires that factual issues relating to contract formation must be resolved first, by trial if necessary. The statute provides: "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *accord. Jin v. Parsons Corp.*, 966 F.3d 821, 826 (D.C. Cir. 2020); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014). Accordingly, "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'" *Guidotti*, 716 F.3d at 776 (citation omitted); *see Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 832–33 (9th Cir. 2022) (remanding for arbitration-related discovery).

The Third Circuit's decision in *Guidotti v. Legal Helpers Debt Resolution, L.L.C.* demonstrates this proper procedure. There, the court treated a motion to compel arbitration in which the facts were disputed as analogous to a motion for summary judgment. It explained that where the facts alleged in the complaint "are unclear regarding the agreement to arbitrate, or" where, as here, "the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," discovery is required. 716 F.3d at 776. In that circumstance, the court should permit discovery and then resolve the motion to compel arbitration, "judging the motion under a summary judgment standard." *Id*. Unless the issue can be decided as a matter of summary

23

judgment, the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement,'" as the statute requires. *Id.* (citation omitted). The Third Circuit vacated the district court's denial of the motion to compel arbitration and remanded for discovery. *Id.* at 780–81.

The Ninth Circuit reached the same conclusion in a different PeopleConnect case. *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 832–33 (9th Cir. 2022), addressed whether an attorney's consent to the Terms of Service bound the client. The court stated that whether the attorney and client had a principal-agent relationship at the time the attorney consented to the Terms of Service was unclear, as the record "[did] not show when" the attorney and client "formed their agency relationship." *Id.* The court remanded the case for factual discovery into this and other open issues. *Id.* Given the existence of a factual dispute, the district court here was obligated to allow discovery and resolve the factual issue before deciding whether the parties agreed to arbitration.

And Judge Kendall reached this precise conclusion in her Order in *Bonilla v. PeopleConnect, Inc.*, No. 21-CV-00051 (N.D. Ill. Mar. 29, 2022), ECF No. 74, another case addressing the Classmates.com website. There, Judge Kendall concluded: "The parties are therefore authorized to engage in limited discovery relating to [the plaintiff's] knowledge, direction, and/or authorization of counsels' investigation on the Classmates.com website, including agreement to the Classmates.com [Terms of Service], as well as discovery topics closely related

thereto." *Id.* at 4. The court added that it would address the arbitration issue after that limited discovery.[5]

### B.     Whether Plaintiff Is Bound By The Arbitration Clause Involves Disputed Issues Of Fact.

Under traditional state law principles of agency, even if Plaintiff did not authorize his agent to accept the Terms of Service, Plaintiff ratified Mr. Osborn's agreement to the Terms of Service. Plaintiff ratified the agreement by accepting the benefit of Mr. Osborn's conduct on areas of the website available only to Free and Paid Members to bolster his claim, or by failing to repudiate his counsel's actions after PeopleConnect made it clear to him that he had received a benefit from Mr. Osborn's behavior. In order to combat this argument, Plaintiff primarily relied on declarations from himself and his attorneys.

Plaintiff's declarations create issues of fact—they do not resolve them. PeopleConnect is entitled to probe Plaintiff's proof and the inconsistencies in the statements of the witnesses. Plaintiff's own shifting stories themselves create disputes of fact. The district court erred by accepting, without discovery, Plaintiff's factual assertions relating to contract formation.

---

[5] The parties in that case conducted discovery. *See* Joint Mot. to Modify Briefing Schedule ¶4, *Loendorf v. PeopleConnect, Inc.*, No. 21-CV-00051 (N.D. Ill. Jan. 9, 2023). The plaintiff then sought leave to amend her complaint to include two more named plaintiffs, Mot. for Leave to File Am. Compl. (Feb. 15, 2023), ECF No. 112. PeopleConnect opposed that motion because the claims of all the plaintiffs there were untimely. *See* PeopleConnect's Opp'n (Mar. 17, 2023), ECF No. 119. The district court determined it will revisit the arbitration issue after disposing of the motion to amend, which remains pending. *See* Minute Entry (Feb. 24, 2023), ECF No. 118.

### 1.   A Client Is Bound By Actions Of His Attorney That He Authorizes Or Ratifies.

This Court has held that a nonsignatory to an arbitration agreement entered into by another is bound when principles of contract and agency law so require. *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.,* 800 F.3d 853, 857 (7th Cir. 2015) (agency is one of five theories for binding a nonsignatory to an arbitration agreement).

To decide issues of contract and agency, federal courts look to state law. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (When deciding "whether the parties agreed to arbitrate a certain matter," courts should "apply ordinary state-law principles that govern the formation of contracts." (citations omitted)); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (The FAA does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)."). Here, Illinois is the forum state in this diversity action and its law is applicable. *See generally Paulsen v. Abbott Lab'ys*, 39 F.4th 473, 477 (7th Cir. 2022) (overview of applicable choice-of-law rules for federal courts sitting in diversity).

Two specific principles of Illinois law inform PeopleConnect's position.

*First*, an attorney is generally considered to be an agent of the attorney's client, and a client generally is bound by the acts of their attorney-agent within the scope of their authority. *See Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 9 (2004) (excepting intentional torts); *People v. Spivey*, 2017 IL App (2d) 140941, ¶16 (noting that the functioning of a representative system of litigation depends on a client being bound by their attorney's acts); *see also In re Sterling*, 933 F.3d 828,

26

833 (7th Cir. 2019) ("[T]he clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds." (citation omitted)).

*Second*, even if an agent lacked actual authority to enter into a contract at the time of contract formation, a principal ratifies the contract, and thus will be bound by its terms, if he accepts its benefits or otherwise does not repudiate it once known. *Zeman v. Alvarez Diaz,* 2021 IL App (1st) 200797, ¶40; *Athanas v. City of Lake Forest*, 276 Ill. App. 3d 48, 57 (2d Dist. 1995). A principal ratifies the actions of an agent when the principal accepts the benefits of their agent's actions while aware of or while remaining willfully ignorant of the facts—either through gross or culpable negligence or through deliberate avoidance. *Progress Printing Corp. v. Jane Byrne Pol. Comm.*, 235 Ill. App. 3d 292, 310–11 (1st Dist. 1992); *Langan v. Rasmussen*, No. 15-cv-01285, 2018 WL 4148842, at *3 (C.D. Ill. Aug. 30, 2018). Moreover, failing to repudiate—and thus ratification—can be inferred from silence. *See Phillips v. City of Belleville*, 2014 IL App (5th) 130268-U, ¶32 (citing *McGeoch v. Hooker*, 11 Ill. App. 649, 653 (1st Dist. 1882)) ("It has been long held that when the relation of agent and principal exists, but in a particular transaction the agent has exceeded his authority, an intention to ratify will be presumed from the silence of the principal beyond a reasonable time.").

As a result, Plaintiff can be bound under Illinois law to arbitrate based on his attorney's actions, either on a theory of contemporaneous authorization or subsequent ratification.

27

### 2. Whether Plaintiff Authorized Or Ratified His Counsel's Actions Depends On Disputed Questions Of Fact.

When PeopleConnect moved to compel arbitration, it argued that Mr. Osborn used one of his many Classmates.com's accounts, under which he accepted the Terms of Service—including the arbitration agreement—to search for Plaintiff's name in anticipation of litigation. Mr. Osborn was on notice that PeopleConnect considered him bound by the Terms of Service, despite his efforts to avoid their plain application. *See* Dkt. 45-1 ¶¶12–17, 26–33. PeopleConnect also contended that when Plaintiff reviewed the complaint, which contained information that is available only to Members who accepted the Terms of Service—namely, information that is displayed to Members when they use the search feature—Plaintiff became aware of his attorneys' actions and nonetheless chose to use this information to bolster his claims against PeopleConnect, thereby ratifying his counsel's acceptance of the arbitration provision. In fact, Plaintiff attached to his complaint PeopleConnect's statement that Plaintiff would be bound to the Terms of Service. *See* Dkt. 1-4. And to the extent Plaintiff pleads ignorance at that time, he was well aware of this issue when PeopleConnect filed its Motion, yet he continued to rely on information available exclusively to Members in his complaint and in subsequent filings. PeopleConnect's argument implicates disputed questions of fact.

### a. There Is A Material Dispute Of Fact Regarding Who Searched For Plaintiff On Classmates.com.

If the person who prepared the complaint accessed Classmates.com and accepted the Terms of Service, and Plaintiff authorized or ratified that conduct,

this matter should be arbitrated. To get to the bottom of this factual issue, a preliminary issue is to determine who accessed the website. The facts regarding that question are disputed.

Mr. Osborn, one of Plaintiff's lawyers, first created an account on August 25, 2019. Dkt. 45-1 ¶26. In addition, in violation of PeopleConnect's Terms of Service, Mr. Osborn created at least five more accounts up until October 28, 2021. *Id.* ¶¶26–33. PeopleConnect also knows that someone searched for "Scott Mackey" on January 5, 2022. *Id.* ¶24. Further, less than a week later, still prior to the filing of his complaint, Plaintiff's counsel advised PeopleConnect's counsel that "*Plaintiff's counsel* visit[ed] [C]lassmates.com" to search for Plaintiff. Dkt. 1-3 at 1 (emphasis added). Indeed, Plaintiff's attorneys have repeatedly asserted that one of them had searched for him on Classmates.com to prepare this action. *See* Dkt. 14-3 at 1; Dkt. 24-1 at 2 (same).

Given these concessions, and based on its review of its business records, PeopleConnect believed Mr. Osborn, who it is uncontested has consented to the Terms of Service, is the person who searched for Plaintiff. But after PeopleConnect filed its Motion, Plaintiff changed his story. To PeopleConnect's surprise, he now claims his attorneys never searched for him, Dkt. 55 ¶7, but rather it was an unnamed staff member, who counsel asserted did not have a Classmates.com account. Dkt. 53 at 9; Dkt. 56 ¶¶6–7. Plaintiff notably did not submit a declaration of the person who allegedly conducted the search, so whether that individual has an account could not be investigated. Instead, Plaintiff submitted a hearsay declaration of his other counsel, Mr. Strauss,

stating that an unnamed staff person had conducted the search. Dkt. 56 ¶6. Mr. Strauss also stated that he directed the staff member to conduct the search using portions of Classmates.com that did not require an account. *Id.* ¶7.

Thus, as things stood when the district court decided the Motion, there were issues of fact regarding who accessed Classmates.com and what they did on the website—PeopleConnect asserted it was Mr. Osborn using one of his many Classmates.com accounts, while Plaintiff asserted it was an unnamed staff member who did not create an account. These issues are relevant to whether Plaintiff, through his agents, agreed to arbitrate. In his complaint, filed on January 20, 2022, Plaintiff included information that can be discovered only through the accessing portions of Classmates.com available to Free or Paid Members, contradicting Mr. Strauss's instruction. *See* Dkt. 1 ¶¶5–8, 49–50, 54–55; Dkt. 45-1 ¶20. In addition, Plaintiff stated that if PeopleConnect would drop its arbitration argument, he would file "an amended complaint including screenshots gathered from the Classmates.com website," Dkt. 1 ¶41, supporting the reasonable inference that Plaintiff or someone acting on his behalf collected these screenshots in anticipation of litigation. Thus, someone acting at Plaintiff's direction has been exposed to and likely accepted the Terms of Service.[6] Who that is and whether they used a Classmates.com account remains a mystery.

---

[6] Mr. Osborn contends that he has opted out of the Terms of Service. Dkt. 55 ¶¶4–5, 55-1; Dkt. 53 at 13–15. PeopleConnect contends his attempt to opt out of the arbitration provision was not effective because he did not comply with the procedure for opting out set forth in the Terms of Service, Dkt. 45 at 7–8; Dkt. 57 at 7–8; *see* Dkt. 45-1 ¶¶29–33, an issue the district court did not reach.

Factual discovery could reasonably be expected to reveal the identity of the unnamed individual and whether it was Mr. Osborn, this unnamed person, or someone else who actually searched for Plaintiff. In turn, PeopleConnect could then learn the exact steps that person took, whether the searcher accepted the Terms of Service, whether Plaintiff had any contact with that individual, when the search was performed, and whether Plaintiff authorized or ratified that individual's actions.

> **b. There Is A Material Dispute Of Fact Regarding Plaintiff's Knowledge Of The Arbitration Agreement.**

The district court accepted as undisputed Plaintiff's statements that he "did not know that [Mr.] Osborn had created a Classmates.com account or ever agreed to its [Terms of Service] until seeing PeopleConnect's Motion filed on July 13, 2022." A4. But PeopleConnect is not required to accept that representation on faith. It should have a chance to test that assertion, if for no reason other than the veracity of Plaintiff's statement is doubtful on its face.

For one thing, Plaintiff reviewed the complaint before it was filed, and that complaint refers to the arbitration issues at length. *See* Dkt. 54 ¶9; *see* Dkt. 1 ¶¶36–45 (alleging that Plaintiff is not bound to the arbitration clause). Nonetheless, Plaintiff in his declaration avers "he knew nothing then of any agreement to arbitrate between his counsel and PeopleConnect" and "[h]e retained and authorized his counsel to pursue litigation in federal court, not arbitration." *See* A4. Plaintiff's inconsistency on this key issue warrants exploration in discovery. The record before the district court meant it simply could not fully credit Plaintiff's assertion that he had no knowledge of the

arbitration agreement before this litigation began. At most, his declaration creates a dispute of fact.

For another, while the district court pointed to a pre-suit letter Plaintiff's lawyers sent to PeopleConnect's counsel noting that PeopleConnect previously had raised arguments regarding arbitration, that letter actually bolsters PeopleConnect's need for discovery. *See* Dkt. 1-3 at 1. The pre-suit letter explicitly discusses the arbitration agreement and how, in Plaintiff's counsel's opinion, Plaintiff is not bound. Although the district court stated that, like the complaint, the letter did not "contain[] any reference to [Mr.] Osborn's personal Classmates.com account that he opened in 2019," A12, what the letter shows is that Plaintiff and his attorneys knew of the Terms of Service and the arbitration clause from the beginning of their attorney-client relationship through the filing of his complaint. So, while the letter identifies, without citing any evidence, counsel's legal conclusions regarding Plaintiff's supposed lack of ratification, it also confirms that Plaintiff had contemporaneous awareness of the arbitration issue. *Id.* Moreover, Plaintiff also attached to the complaint PeopleConnect's response in which it rejected Plaintiff's legal suppositions and reiterated its view that Plaintiff was bound to arbitrate. *See* Dkt. 1-4 at 1. PeopleConnect's response highlighted that there was a notable issue regarding the arbitration agreement and what his counsel did on Classmates.com.

The district court wholly ignored PeopeConnect's response and also ignored the clear intent behind the letter from Plaintiff's counsel and the complaint, both of which confirm that Plaintiff and his attorneys knew that the

Classmates Terms of Service existed. It would be counter-intuitive to presume that Plaintiff was not aware of the arbitration agreement when the documents plainly discuss it and the complaint itself discusses counsel's efforts to escape, if not evade, its terms. At a minimum, the discussions of the arbitration agreement in both documents raise a dispute regarding Plaintiff's knowledge.

Discovery would enable PeopleConnect to understand the circumstances surrounding the formation of the attorney-client relationship between Plaintiff and his lawyers, which would directly inform how the district court should rule on the motion to compel arbitration. *See Knapke*, 38 F.4th at 834–35. Discovery would reveal Plaintiff's knowledge of the arbitration agreement and his understanding of what his attorney did to determine whether he in fact appeared on Classmates.com. After all, if Plaintiff reasonably expected someone with a Classmates.com account to search for him on the website on his behalf to verify that he in fact had a claim, that conduct would naturally include accessing webpages available only for Free and Paid Members and, therefore, agreeing to the Terms of Service.

In addition, "the ratification inquiry looks not only to the principal's knowledge, but also to the principal's later actions." *Id.* at 835. PeopleConnect should have the opportunity to investigate those actions. Plaintiff has taken advantage of his counsel's activities on Classmates.com to bolster his complaint. In his complaint, he even suggests that he would be willing and able to provide screenshots of his yearbook photo from the website, Dkt. 1 ¶41—thus, at least suggesting that he is aware that Mr. Osborn, the unnamed staff member, or

someone else acting on his behalf has searched the PeopleConnect website and that he would like to include that information in his action against PeopleConnect. Moreover, when PeopleConnect moved to compel arbitration, Plaintiff did not back down from his offer to incorporate screenshots of portions of the website exclusive to Free or Paid Members. *See* Dkt. 53. Rather than arguing that Mr. Osborn (or whomever it was) acted outside the scope of their relationship, Plaintiff has argued his way around the issue. Plaintiff still has not expressly disavowed that he has not and will not use portions of Classmates.com that require acceptance of the Terms of Service. PeopleConnect is entitled to understand how Plaintiff manages to square this circle of denying he has ever had any benefit from Mr. Osborn's or others' actions, while continuing to rely on the information gleaned from that conduct.

### C. The Court Should Reverse And Remand For Limited Discovery Into Whether Plaintiff Authorized His Attorney To Agree To The Terms Of Service Or Ratified That Action.

Deciding the factual issue of whether a party agreed to arbitrate is not limited to considering the pleadings where, as here, the underlying facts are disputed. Yet that is how the district court treated the issue. It denied the Motion because it found "[Plaintiff's] explanation is plausible." A10. A plausible factual dispute, however, entitles the parties to discovery, and potentially a trial (if needed). *See Hansen*, 1 F.4th at 671; *Jin*, 966 F.3d at 826; *Howard*, 748 F.3d at 978. This is particularly true when the declarations at issue contradict prior statements. *Cf. Com. Underwriters Ins. Co. v. Aires Env't Servs., Ltd.*, 259 F.3d 792, 799 (7th Cir. 2001) ("[P]arties may not 'patch-up potentially damaging

deposition testimony' with a contradictory affidavit." (quoting *Maldonado v. U.S. Bank*, 186 F.3d 759, 769 (7th Cir. 1999)).

The district court should have ordered discovery to get to the bottom of Plaintiff's factual inconsistencies and to permit PeopleConnect to test Plaintiff's self-serving statements. *Cf. Durukan Am., LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1164 (7th Cir. 2015) ("[A] judge cannot take two affidavits which swear to opposite things and say, 'I find one of the affidavits more credible than the other, and therefore I shall accept it as true'" without an evidentiary hearing (citations omitted)).

PeopleConnect has yet to conduct a single deposition or serve written discovery. But Plaintiff was allowed to offer, and the district court accepted—without question—statements that are inconsistent with his prior positions. PeopleConnect is entitled to discovery into facts relevant to the formation of the agreement to arbitrate.

## II.  PLAINTIFF FAILS TO STATE A CLAIM BECAUSE PEOPLECONNECT'S ALLEGED USE OF HIS NAME OR LIKENESS WAS INCIDENTAL.

The district court also erred when it refused to decide whether Plaintiff's allegations were immune from liability under IRPA as "incidental use" because it concluded Illinois courts have not clearly determined that this common law principle applies to IRPA claims. That is error, for the mere silence, to date, from

the Illinois Supreme Court did not absolve the district court of its duty to determine properly presented issues of state law.[7]

### A. The District Court Erred In Failing To Decide Whether The Incidental Use Doctrine Exists In Illinois.

When a federal court sitting in diversity is faced with an issue of state law which the state supreme court has not addressed, the court "must 'use [its] own best judgment to estimate how the [State] Supreme Court would rule as to its law.'" *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (citation omitted). It should not ignore the issue until the state supreme court has occasion to rule. *See Rutledge v. Scott Chotin, Inc.*, 972 F.2d 820, 825 (7th Cir. 1992) (rejecting the plaintiff's argument that federal court should not have decided "novel question of state law" because "[t]he federal courts have the power and duty to decide questions of state law arising in any case properly before the court." (citing *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 725 (1966)); *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 431 (N.D. Ill.), *modified on other grounds*, 242 F.R.D. 434 (N.D. Ill. 2007) ("In the absence of state supreme court precedent on the subject, it is the duty of the federal courts to 'determine the

---

[7] Although the district court's decision to deny arbitration provides the basis for this Court's jurisdiction to hear this interlocutory appeal under Section 16 of the FAA, the Court's review is not limited to that issue. Instead, the Court's review power reaches the other bases on which the district court denied PeopleConnect's Motion that were encompassed in that court's order. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005) ("When a statute authorizes interlocutory appellate review, it is the district court's entire decision that comes before the court for review." (citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)).

content of the state law as the highest court of the state would interpret it.'" (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 636 (7th Cir. 2002)).

This Court's decision in *Continental Vineyard, LLC v. Vinifera Wine Co.*, 973 F.3d 747 (7th Cir. 2020), exemplifies the role of a federal court in addressing issues of state law. There, a party argued the district court erred in ordering equitable disgorgement because there were no state appellate court decisions on point, and instead the district court relied on the Restatement (Second) of Conflict of Laws. *Id.* at 758–59. This Court rejected that argument. Even though "no [state] court has ever explicitly adopted [the Restatement provision,] [t]hat is not the way things work." *Id.* at 759. Rather, "when a district court is faced with silence from the state courts … the district court must make an educated guess about the likely content of state law." *Id.* The Court affirmed the district court's prediction of state law. *Id.*

The district court, here, did not do so. Instead, it refused to decide whether Illinois recognizes the incidental use doctrine because "the Illinois Supreme Court has not adopted the incidental-use exception" and there were no cases that "import[ed] this common-law doctrine into interpret[ing]" IRPA. A22. The district court, however, had a duty to decide dispositive issues properly presented before it; after all, it is "the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177 (1803); *Trs. of Ind. Univ. v. Curry*, 918 F.3d 537, 541 (7th Cir. 2019) ("Resolving edge questions is a principal role of the courts."). The district court erred by declining to entertain the question.

**B.** **Illinois Courts Will Apply The Common Law Incidental Use Doctrine To IRPA.**

IRPA, its purpose, and pre-IRPA common law decisions demonstrate the incidental use doctrine is alive and well in Illinois. IRPA codifies the Illinois "common-law right of publicity." *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, ¶14 (citation omitted). As such, Illinois courts continue to rely on decisions decided before IRPA to interpret the statute. *See, e.g.*, *Brown v. ACMI Pop Div.*, 375 Ill. App. 3d 276, 282–83 (1st Dist. 2007) (citing *Dwyer v. Am. Exp. Co.*, 273 Ill. App. 3d 742, 748 (1st Dist. 1995) and *Leopold v. Levin*, 45 Ill. 2d 434, 441 (1970)). Pre-IRPA common law cases, in turn, relied on the Restatement of Torts to define the scope and breadth of this cause of action. *See Leopold v. Levin*, 45 Ill. 2d 434, 442–43 (1970) (citing W. Page Keeton et al., *Prosser & Keeton on the Law of Torts*, § 112 (3d ed. 1964) and *Restatement (First) of Torts*, § 867 cmt. c (1939)); *Dwyer v. Am. Exp. Co.*, 273 Ill. App. 3d 742, 747–48 (1st Dist. 1995) (citing *Restatement (Second) of Torts*, § 652C (1977)).

The Restatement explicitly notes that the incidental use doctrine applies to right of publicity claims: "The value of the plaintiff's name is not appropriated by mere mention of it …. No one has the right to object merely because his name or his appearance is brought before the public." *Restatement (Second) of Torts*, § 652C cmt. d (1977). One pre-IRPA Illinois appellate court decision relied on precisely this portion of the Restatement. In *Berkos v. National Broadcasting Co.*, 161 Ill. App. 3d 476 (1st Dist. 1987), a Cook County judge sued NBC for mentioning him in a television news segment about a judicial corruption scandal. *Id.* at 481–82. Citing the Restatement, the appellate court held the plaintiff did

not state a right of publicity claim because the mere fact that the broadcast incidentally mentioned him did not constitute a commercial use. *Id.* at 495–96 (quoting *Restatement (Second) of Torts*, § 652C, cmt. d).

IRPA did not abrogate this common law rule. Although the statute contains specific exceptions—"including any news, public affairs, or sports broadcast or account, or any political campaign," 765 ILCS 1075/35(b)(2)—the list is not exhaustive. It provides examples of non-commercial use. *See In re Schwartz*, 799 F.3d 760, 763 (7th Cir. 2015) ("[T]he fact that the [four examples] are introduced by 'including' tugs against the argument that they are exclusive, or that they exhaust the statute."). Because IRPA was designed to codify the common law, the Court should continue to apply the common law incidental use doctrine.

Finally, the continued vitality of the incidental use doctrine is consistent with IRPA's legislative purpose. IRPA was enacted to "keep pace with" the "other commercially significant states, such as New York and California" that had enacted right of publicity legislation. HB 442, 90th Gen. Assemb., 49th House Proceedings, Tr. of House Debate 228 (Ill. Apr. 24, 1997) (statement of Rep. A. Turner), https://www.ilga.gov/House/transcripts/Htrans90/T042497.PDF. Both New York and California have applied the incidental use doctrine for decades. *Marks v. Elephant Walk, Inc.*, 156 A.D.2d 432, 434 (N.Y. App. Div. 1989) ("It is well settled that where, as here, a reference to an individual is 'fleeting and incidental,' it will not be actionable as a nonconsensual use of that person's name for the purpose of advertising or trade.") (citations omitted); *Aligo v. Time-Life Books, Inc.*, No. C 94-20707, 1994 WL 715605, at *2–3 (N.D. Cal. Dec. 19,

1994); *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 894–95 (1974).

The overwhelming majority of other states that have recognized the right of publicity also apply the incidental use exception. *See generally* 2 J. Thomas McCarthy et al., *The Rights of Publicity & Privacy*, § 7:20, Westlaw (2d ed. database updated May 2023) ("The mere insignificant or fleeting use of a person's name or image in an advertisement will not trigger liability when such a usage will have only a de minimis commercial implication."); *see, e.g.*, *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 306–07 (Ohio Ct. App. 2020); *Staruski v. Cont'l Tel. Co. of Vt.*, 581 A.2d 266, 268 (Vt. 1990) ("The incidental use of a person's name is not of course grounds for liability."); *see also Schifano v. Greene Cnty. Greyhound Park, Inc.*, 624 So. 2d 178, 181 (Ala. 1993).

## C.    Plaintiff Pleads An Incidental Use Of His Identity.

Plaintiff's allegations fall within the type of fleeting or insignificant usage that cannot sustain a cause of action. The Alabama Supreme Court's decision in *Schifano* is instructive. There, plaintiffs were photographed at a public venue and the defendant later used that photograph in a brochure to promote the venue's services. 624 So. 2d at 179. The brochure "did not refer to the persons in the photograph, either by name or by implication, and the photograph in which the plaintiffs were pictured was one of several photographs in the brochure illustrating various Park services and activities." *Id.* The court held that the inclusion of the photo of plaintiffs offered "no unique quality or value" because they were never identified and were part of a larger group. *Id.* at 181.

Similarly, the Eleventh Circuit rejected a right of publicity claim under Florida law against Amazon, where the plaintiff alleged Amazon advertised the sale of a book with her photograph on the cover. *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1324–26 (11th Cir. 2006). The court there held that "Amazon's use of book cover images closely simulates a customer's experience browsing book covers in a traditional book store," and therefore the use of the plaintiff's photo was "merely incidental to, and customary for, the business of internet book sales." *Id.* at 1326 (citation omitted).

Plaintiff alleges PeopleConnect violated IRPA: (1) by uploading thumbnail images presented in a low-resolution format of pages from his school yearbook that included his photo on a webpage that included dozens of similar thumbnails; and (2) by displaying banner ads for its subscription service next to search results, again presented in small thumbnail images, that may include his yearbook photo. Dkt. 1 ¶¶5–9, 11. Plaintiff alleges precisely the type of attenuated usage that cannot support a right of publicity claim.

First, when a Visitor browses a yearbook, the Visitor only sees low-resolution pages, which contain numerous individuals. *See* Dkt. 1 ¶5; *see supra* at 8. Visitors are not given any offer to subscribe—it is only after they choose to create their own account in a separate pop-up window (and therefore become a Free Member) are they taken to yet another separate webpage that mentions for the first time Classmates.com's subscription service. The pop-up, offer, and confirmation described above do not include or even reference any person's yearbook photo or the identity of any person in a yearbook. *See supra* at 9, 11.

At most, they reference the name of the Visitor or Free Member—not anyone in the thumbnails. *See supra* at 12–14. Assuming anyone ever saw the yearbook page with Plaintiff's yearbook photo in this low-resolution format, he is but a face in the crowd.

Second, as for the "banner ads" that appear for Free Members next to search results, *see* Dkt. 1 ¶¶8, 55, those again are not connected to the thumbnail yearbook photos in any way—again, they may reference the Free Member, but not the person who was searched. *See supra* at 12–14. In fact, a Free Member need not even conduct a search to see these "banner ads"—they immediately appear on the Free Member landing page or before the Free Member can run a search. *See supra* at 12, 14.

PeopleConnect's website parallels the advertisements seen in *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190 (2017). There, the plaintiff sued Facebook for displaying advertisements next to pages about him with his image and name. *Id.* at 209. Analyzing California law, the California Court of Appeal held that the plaintiff failed to state a claim because Facebook did not "actually use" his likeness, *id.* at 210; all he had alleged was "that Facebook allowed unrelated third-party advertisements to run adjacent to pages containing users' comments about [him] and his business practices." *Id.* at 211. The same is true here. The alleged "banner ads" on Classmates.com are completely divorced from the search results. *See supra* at 12–14. Assuming anyone had ever searched for Plaintiff, these banner ads only appear next to a search result. Proximity to an ad is not enough to trigger liability under IRPA—otherwise, anyone whose image appeared

in a newspaper or magazine that so happened to be placed next to an offer to subscribe would have a claim.

Thus, the common law incidental loss doctrine, which the Illinois courts would apply to IRPA, forecloses liability in this case.

## III. BECAUSE PLAINTIFF FAILS TO PLEAD HIS LIKENESS WAS DISPLAYED IN ILLINOIS, THE ALLEGED EXTRATERRITORIAL IRPA CLAIM IS NOT ACTIONABLE.

PeopleConnect also moved to dismiss the complaint because it did not allege wrongful conduct in Illinois, as IRPA requires. The complaint alleges displaying a yearbook photo of an Illinois resident gives rise to a claim regardless of whether, or importantly where, that image is displayed. PeopleConnect argued IRPA only extends to displays in Illinois—the Illinois legislature did not seek to police the display of advertisements in other states.

The district court rejected PeopleConnect's extraterritoriality argument. It concluded "third-party viewing is not an element of an IRPA claim." A17 (citations omitted). The district court focused on the wrong issue. The issue is whether the information was displayed in Illinois. This Court in *Huston v. Hearst Communications* made it clear that display *is* necessary to allege an IRPA claim. After all, the core element of an IRPA claim is the use of a plaintiff's name or likeness *in an advertisement*, and that conduct must occur in Illinois. *See* 765 ILCS 1075/30(a). Because Plaintiff has failed to plead any facts on this point, his claims fail.

## A. Illinois Does Not Apply Its Laws Extraterritorially Unless Explicitly Stated.

There is a "long-standing rule of construction in Illinois which holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005) (citations omitted). While "there is no single formula or bright-line test" regarding extraterritoriality, the core issue is whether the plaintiff has sufficiently alleged that the conduct necessary to violate the statute "occurred primarily and substantially in Illinois." *Id.* at 187.

Courts look at whether the plaintiff alleged that the instigating conduct occurred in Illinois. That is what the Illinois Supreme Court held in *Avery*, a case under the Illinois Consumer Fraud Act. The court held "the critical question … [is] whether the circumstances relating to [the] plaintiffs' disputed transactions with [the defendant] occurred primarily and substantially in Illinois." *Id.* The court held that because the majority of the conduct occurred outside Illinois, the out-of-state plaintiff was attempting inappropriately to apply Illinois law extraterritorially. *Id.* at 187–90.

Following *Avery*, courts have found a plaintiff's Illinois residence is an insufficient basis for a statutory claim. In *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752 (N.D. Ill. 2008), the district court rejected the named plaintiffs' Consumer Fraud Act claims because even though the plaintiffs lived in Illinois, they "point to no allegations that plausibly suggest that the purported deceptive [ ] scheme occurred primarily and substantially in Illinois." *Id.* at 775. In *United States Board of Oral Implantology v. American Board of Dental Specialties*, 390 F.

Supp. 3d 892 (N.D. Ill. 2019), the district court determined that even though *all* the parties resided in Illinois, *see id.* at 898, the plaintiffs nonetheless failed to state a claim under the Illinois Uniform Deceptive Trade Practices Act because they did not allege that the critical actions that formed the basis of their claims (the publication of a newsletter and statements made to students) occurred in Illinois. *Id.* at 910–11. And in *McGoveran v. Amazon Web Services, Inc.*, CA. No. 20-1399, 2021 WL 4502089 (D. Del. Sept. 30, 2021), the court found the plaintiffs failed to plead their Illinois Biometric Information Privacy Act claims because they did not allege that the defendants ever "created, possessed, or stored" their biometrics in Illinois. *Id.* at *4.

Not a single provision in IRPA states or suggests that the Illinois General Assembly intended to extend the statute to conduct outside of Illinois.[8] *See generally* 765 ILCS 1075/1, *et seq.* That means it does not extend beyond the State. Thus, IRPA applies only where the operative factual allegations relate to conduct in Illinois. The presence of an Illinois plaintiff is insufficient.

---

[8] IRPA's legislative history confirms as much. *See* HB 1422, 90th Gen. Assemb., *supra* at 39, Tr. of House Debate at 228 (statement of Rep. A. Turner) (noting in response to a question of non-Illinois residents' ability to bring an IRPA claim that such individuals could only do so for "*the use* of that person's image [or likeness] *here in Illinois.*" (emphasis added)).

45

**B.     To State An IRPA Claim, Plaintiff Must Allege Publication Or Display Of His Name Or Likeness In Illinois.**

The critical factual component of an IRPA claim is the display of a plaintiff's identity in connection with a commercial offer. As shown above, that conduct must be in Illinois.

IRPA prohibits anyone from using another's identity "for commercial purposes" without their written consent. 765 ILCS 1075/30(a). In turn, IRPA defines a "commercial purpose" as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.* § 1075/5. The operative statutory language is that the plaintiff's identity be the subject of "public use or holding out." *Id.*

This Court's decision in *Huston v. Hearst Communications* demonstrates the importance of an actual display of the plaintiff's identity in determining whether there was a "public use or holding out." There, the plaintiff sued a magazine publisher under IRPA for selling a mailing list that included her name, address, age, and other personal information. 53 F.4th at 1099. In affirming the dismissal of the complaint, this Court held the plaintiff failed to allege the defendant "solicited mailing list purchasers by *publicizing* her information." *Id.* at 1100 (emphasis added). IRPA "prohibits the use or holding out of a person's identifying information to *offer to sell or sell* a product, piece of merchandise, good, or service." *Id.* at 1101 (citing 765 ILCS 1075/5). Therefore, "any use or

46

holding out must either accompany an offer to sell or precede the sale." *Id.* (citing *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 907 (7th Cir. 2005)).

In *Huston*, this Court addressed *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, the leading Illinois decision on the scope of IRPA's "commercial purpose." In *Trannel*, the defendant published a photo of the plaintiff and her daughter in a magazine with their consent, but later used that same photo in a media kit to promote the magazine to advertisers. *Id.* ¶¶1, 4. The Illinois Appellate Court determined that while the defendant did not publicly use the plaintiffs' identities, *id.* ¶20, sending the media kits to potential advertisers violated IRPA because the defendant "held out" the plaintiffs' identities for a commercial purpose without their consent. *Id.* ¶¶21–22.

The *Huston* Court distinguished *Trannel* because "[the plaintiff's] identity was not placed on the cover of the mailing list or held out to aid, effectuate, or propose a commercial transaction." 53 F.4th at 1101–02. Moreover, even if her identity had been published that was not enough for this Court: "[h]er identity must [also] help sell something—whether it is that product or a separate product or service." *Id.* The *Huston* decision makes clear that in order to allege a "public use or holding out" of his identity, a plaintiff must allege that his identity was published or displayed before or alongside the advertisement—otherwise, he cannot state an IRPA claim.

Various district courts, like the district court here, have misread the "holding out" prong as eliminating any requirement that the plaintiff's identity be displayed. *See, e.g.*, A17; *Fischer v. Instant Checkmate LLC*, No. 19 C 4892,

2022 WL 971479, at *10–11 (N.D. Ill. Mar. 31, 2022). Because the conduct made unlawful in IRPA is the display before or with a commercial offer, *see Huston*, 53 F.4th at 1100–02, and Illinois law only applies to unlawful acts in the state, an IRPA claim must also allege that this display occurred in Illinois. *See Avery*, 216 Ill. 2d at 183.

An IRPA claim protects an individual's "right to control and to choose whether and how to use [their] identity for commercial purposes[.]" 765 ILCS 1075/10. To be sure, *Avery* cautioned that focusing only on where the injury occurred "can create questionable results," and the Illinois Supreme Court held that the focus should be on whether "the circumstances relating to the [injury] occur[red] primarily and substantially within [Illinois]." 216 Ill. 2d at 186. But for an IRPA claim, the display of the plaintiff's identity is the whole game. The injury in an IRPA claim is the unauthorized use of a person's identity for a commercial purpose, and thus the circumstances at issue center around that use (*i.e.*, publication or display) of the individual's identity.

Without an allegation of a display occurring in Illinois, the claim stretches beyond the language and purpose of the statute. In fact, when IRPA was before the General Assembly, legislators were wary of applying the law to "non-residents of this state," but acknowledged that the statute would still allow such individuals to bring a claim "if their likeness or their image is used here in this state." HB 1422, 90th Gen. Assemb., *supra* at 39, Tr. of House Debate at 228 (statements of Reps. J. Turner & A. Turner). Thus, because the act of publishing or displaying a plaintiff's identity forms the entire basis for an IRPA claim, a

48

plaintiff must allege the publication or display occurred in Illinois. *See Avery*, 216 Ill. 2d at 187.

### C. Plaintiff's IRPA Claim Is Defective Because He Does Not Allege Publication Or Display In Illinois.

Plaintiff's complaint is devoid of factual allegations that support the inference that his identity was published or held out in Illinois. Plaintiff never once alleges that his likeness was displayed, period, let alone in Illinois. At most, Plaintiff suggests "[o]n information and belief" that "users may search, and have searched, by name and/or location" for him. Dkt. 1 ¶51. Here, all we know is that Plaintiff's counsel—all out of State—searched for him from outside of Illinois. That is fatal to his claim. *See, e.g.*, *United States Bd. of Oral Implantology*, 390 F. Supp. 3d at 911 ("But the complaint does not allege where the newsletter was published, or whether its readers were located 'primarily and substantially' in Illinois. That makes it too speculative to infer where the damage (and where the misrepresentation) actually occurred.").

## CONCLUSION

For the foregoing reasons, PeopleConnect, Inc. respectfully requests that the Court reverse the district court's Memorandum Opinion & Order denying PeopleConnect's Motion and remand the case for discovery on the existence of an arbitration agreement between PeopleConnect and Plaintiff, or in the alternative, remand with instructions to dismiss the complaint.

Respectfully submitted,

PEOPLECONNECT, INC.

By /s/ Michael T. Brody
    One of Its Attorneys

Michael T. Brody
  *Counsel of Record*
Debbie L. Berman
Wade A. Thomson
Clifford W. Berlow
Daniel R. Echeverri*
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
312-222-9350
mbrody@jenner.com

* Admitted in the District of Columbia only.
Practicing under the supervision of members of
the Illinois Bar.

*Counsel for Defendant-Appellant
PeopleConnect, Inc.*

Dated: May 22, 2023

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because, according to the word count function of Microsoft Office Word 365, this brief contains 11,532 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 12 point Bookman Old Style for the main text and footnotes.

Dated: May 22, 2023

/s/ Michael T. Brody
Michael T. Brody

## CERTIFICATE RULE 30(D) STATEMENT

Pursuant to Circuit Rule 30(d), I, Michael T. Brody, an attorney, certify that all materials required by Circuit Rule 30(a) and 30(b) are included in Defendant-Appellant's Required Short Appendix.


Dated: May 22, 2023


/s/Michael T. Brody
Michael T. Brody

**CERTIFICATE OF SERVICE**

I, Michael T. Brody, an attorney, hereby certify that on May 22, 2023, I caused the **Brief And Required Short Appendix Of Defendant-Appellant PeopleConnect, Inc.** to be electronically filed with the Clerk of the Court for the United States Court Of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to ECF procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause 15 copies of the above-named brief to be transmitted to the Court via UPS overnight delivery, delivery charge prepaid, within five days of that date.

/s/Michael T. Brody
Michael T. Brody

**INDEX OF REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT PEOPLECONNECT, INC.**

Memorandum Opinion & Order
    (Mar. 17, 2023) (Dkt. 76) ....................................................................A1

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SCOTT MACKEY, *on behalf of himself and all others similarly situated*, | ) ) ) ) | |
| | ) | No. 22 C 342 |
| *Plaintiff*, | ) | |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| PEOPLECONNECT, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Scott Mackey brings a putative class action against Defendant PeopleConnect, Inc. (Dkt. 1). PeopleConnect owns Classmates.com, a website that maintains a database of school yearbooks. Mackey alleges that PeopleConnect violates the Illinois Right of Publicity Act and is unjustly enriched by using his name and likeness from his high school yearbook to advertise subscriptions to Classmates.com without his consent. (*Id.*) PeopleConnect moves to dismiss for improper venue under Rule 12(b)(3), arguing that Mackey is bound to arbitrate individually any claims against PeopleConnect. (Dkts. 44, 45). In the alternative, PeopleConnect moves to dismiss for failure to state a claim. (Dkts. 44, 45). For the following reasons, the Court denies PeopleConnect's Motion. [44]

**BACKGROUND**

**A.    Classmates.com's Operations[1]**

PeopleConnect, Inc. owns and operates the website Classmates.com, which has collected and made searchable information and images from tens of thousands of yearbooks from Illinois

---

[1] This section concerns the facts relevant to the elements of Mackey's claims against PeopleConnect, which are before the Court on a Rule 12(b)(6) motion to dismiss and assumed true for purposes of the motion. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022).

A1

schools (among its over 400,000 school yearbooks collected from around the country). (Dkt. 1 ¶¶ 1, 6, 23, 25, 32). Web users can visit Classmates.com for free and search for people and their images. (*Id.* ¶ 6). The site first displays low-resolution versions of the searched-for individual's photographs. (*Id.* ¶¶ 5, 7). When users click on the photograph to view a higher resolution version, or when they attempt to view more than two low-resolution photos, a pop-up message asks them to register for a paid Classmates.com membership. (*Id.* ¶¶ 5–7). PeopleConnect also displays messages adjacent to the searched-for individuals' photos soliciting paid subscriptions. (*Id.* ¶ 8). Subscribers then get access to full-resolution student photographs from all yearbooks in the database, visibility into who has visited the subscriber's profile, and the ability to read and reply to messages sent by other subscribers. (*Id.* ¶ 12).

Plaintiff Scott Mackey has never visited Classmates.com nor registered as a member. (*Id.* ¶¶ 2, 46). But the site generates advertisements for its subscription services when someone clicks on his photo. (*Id.* ¶¶ 5–8). Mackey alleges that PeopleConnect has used his own high school yearbook photo to offer paid subscriptions to Classmates.com. (*Id.* ¶¶ 5–8, 49–56). This practice, according to Mackey, misleads the public into believing that he endorses Classmates.com's subscription product when he has not consented to his photo's use. (*Id.* ¶¶ 9–10). There is no opt-out mechanism. (*Id.* ¶ 19).

## B.    Classmates.com's Terms of Service and Arbitration Agreement[2]

Non-member visitors to Classmates.com are prompted to register for a free membership after clicking through only the first few pages of a yearbook. (Dkt. 45-1 ¶ 7). When a visitor registers for a free account, he or she must agree to Classmates.com's Terms of Service and Privacy

---

[2] This section concerns the facts relevant to PeopleConnect's Rule 12(b)(3) motion to dismiss for improper venue. The Court considers facts from evidence outside the pleadings on such a motion. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808–10 (7th Cir. 2011).

Policy ("TOS"). (*Id.* ¶¶ 13, 21). Only after registering for a free membership does Classmates.com show advertisements for paid subscriptions to the site. (*Id.* ¶ 8). To see advertisements for Classmates.com's subscription products, then, the user must have registered for a free account and agreed to the TOS. (*Id.* ¶¶ 4, 8–13).

The TOS includes an arbitration provision that requires Classmates.com members to settle any disputes with PeopleConnect individually through arbitration. (*Id.* ¶¶ 15–16; *id.* at 52, 57 § 12). The November 9, 2021 version of the TOS covers the member as well as anyone on whose behalf the member is acting. (*Id.* ¶ 15 ("Additionally, if you access and use the Websites and Services on behalf of or for the benefit of another, you are also agreeing to these Terms of Service on their behalf, and further affirm that you have the authority to so agreed. Any reference to 'you' or 'your' shall also include any such person(s).")). The TOS also allows the member to opt out, on his own behalf or as an agent for another, of the arbitration provision by sending an opt-out notice to PeopleConnect within thirty days of first use. (*Id.* ¶ 17).

Mackey has never created any membership account—free or paid—with Classmates.com, so he has never personally agreed to the TOS. (*Id.* ¶¶ 22–23; dkt. 54 ¶¶ 11–12). One of his attorneys, Benjamin Osborn, created a Classmates.com account on August 25, 2019, and he did not opt out of the arbitration provision within thirty days. (Dkt. 45-1 ¶ 26). He agreed to the TOS.[3] (*Id.* ¶ 27). Osborn has also created at least five additional accounts using different email addresses

---

[3] Osborn agreed to a different version of the TOS in 2019, which stated in relevant part: "You and PeopleConnect entities each agree that any and all disputes that have arisen or may arise between you and the PeopleConnect entities shall be resolved exclusively through final and binding arbitration." (Dkt. 56-9 at 18–22 § 13). Mackey argues that the TOS Osborn originally agreed to in 2019 did not include Defendant's provided language, which became effective November 9, 2021, and expressly covers anyone on whose behalf the member acts when using the site. (Dkt. 53 at 13). The 2019 TOS also states that updates to the TOS will be posted on the website and this posting constitutes notice of any changes; a member's continued use of the websites and services constitutes acceptance of such changes. (Dkt. 56-9 at 3). If Osborn continued to use his Classmates.com account following the posting of the November 2021 TOS, then he accepted the updated language. The record does not show whether he used his account for any purpose after the November 2021 TOS came into effect.

and sent notice to PeopleConnect to opt out of the arbitration provision for three of them.[4] (Dkt. 45-1 ¶¶ 28–33).

Mackey retained Osborn on June 3, 2021, and before then, he had never met or spoken with Osborn. (Dkt. 54 ¶¶ 3–4). Mackey did not know that Osborn had created a Classmates.com account or ever agreed to its TOS until seeing PeopleConnect's Motion filed on July 13, 2022. (*Id.* ¶¶ 7–8). Just before filing this lawsuit on Mackey's behalf, Osborn emailed PeopleConnect's counsel stating that Mackey does not consent to arbitration of any claims he may have against PeopleConnect, does not authorize his counsel to consent to arbitration on his behalf, and has not ratified any agreements to arbitrate. (Dkt. 1-3). The email does not reference Osborn's own Classmates.com account nor his prior assent to the TOS. (*See id.*) Mackey reviewed the Complaint before it was filed on January 20, 2022, and he knew nothing then of any agreement to arbitrate between his counsel and PeopleConnect. (Dkt. 54 ¶ 9). The Complaint itself includes a section designated "No Agreement to Arbitrate" and references similar lawsuits in other jurisdictions against PeopleConnect. (Dkt. 1 ¶¶ 36–45).

Mackey did not include screenshots in the Complaint to show how his likeness is used in advertisements to avoid PeopleConnect's arguments in the earlier lawsuits that use of screenshots in the Complaint would confer a benefit on him. (*Id.* ¶¶ 37, 40). The Complaint neither references Osborn's account nor states that Osborn had agreed to Classmates.com's TOS. (*See id.*) Mackey "do[es] not agree, and ha[s] never agreed, to arbitrate [his] claims against PeopleConnect." (Dkt. 54 ¶ 13). He retained and authorized his counsel to pursue litigation in federal court, not arbitration. (*Id.* ¶¶ 14–15). Finally, Osborn asserts that he personally has "never searched for Mr. Mackey's

---

[4] PeopleConnect asserts that Classmates.com's TOS prohibits one person from creating multiple accounts using different email addresses. (Dkt. 45-1 ¶ 14).

name or photograph on www.classmates.com," nor visited the site for any purpose related to Mackey's claim. (Dkt. 55 ¶ 7).

## C.    Procedural History

Mackey has sued on behalf a class of current and former Illinois residents who are not subscribers of Classmates.com and whose names, photographs, and personal information PeopleConnect extracted from yearbooks and incorporated into its yearbook database to promote Classmates.com subscriptions. (Dkt. 1 ¶¶ 65–72). He brings claims under the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* ("IRPA"), and Illinois common law for unjust enrichment. (*Id.* ¶¶ 73–86). PeopleConnect moves to dismiss for improper venue under Rule 12(b)(3), asserting that Mackey is bound to arbitrate any claims he may have against it. (Dkt. 44). In the alternative, PeopleConnect moves to dismiss for failure to state a claim. (*Id.*)

**LEGAL STANDARD**

A party must move to dismiss for improper venue—rather than to compel arbitration—when an "arbitration clause requires arbitration outside the confines of the district court's district."[5] *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011); *see also Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009). To determine whether the parties are bound to arbitrate, the Court can consider facts outside the pleadings. *Id.* at 809–10. The Court draws reasonable inferences in favor of the non-moving party. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014) (citing *Faulkenberg*, 637 F.3d at 806).

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and "draw[s] all reasonable inferences in the [plaintiff's] favor." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). The Court "also consider[s] any documents attached to and integral

---

[5] The arbitration agreement here designates Seattle, Washington, as the arbitration location. (Dkt. 45-1 at 57 § 12.B.2).

5

to the complaint as part of the [plaintiff's] allegations." *Id.* The complaint's "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), must offer more than "labels and conclusions" or "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a defendant's motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Notably, "[t]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession or control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and citations omitted).

**DISCUSSION**

**A.      Motion to Dismiss for Improper Venue Under Rule 12(b)(3)**

The Court, rather than an arbitrator, resolves whether an agreement to arbitrate exists. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005). Agreements to arbitrate remain "a matter of contract." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Just as in any contract, a party must have agreed to an arbitration provision to be bound by it. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Illinois contract law here governs whether an enforceable agreement to arbitrate exists. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (federal courts sitting in diversity apply the "choice-of-law rules of the forum state" and under Illinois's rules, "forum law is applied 'unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply'" (internal citation omitted)).

6

A6

Mackey never personally agreed to arbitrate claims against PeopleConnect because he never accepted Classmates.com's TOS. He denies ever visiting Classmates.com, let alone agreeing to its TOS through registering for an account. PeopleConnect submits that he is nevertheless bound to arbitrate because his attorney, Osborn, created a Classmates.com account in August 2019 and failed to opt out of the TOS, which Mackey then ratified by accepting the benefits of his counsel's prior agreement.

An attorney is his client's agent and can bind his client while acting within the apparent scope of his authority during legal representation. *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 277 (Ill. 2004). Osborn acted for himself and not for Mackey when he created his account in August 2019. Osborn had never met and did not represent Mackey before June 3, 2021, so he had neither actual nor apparent authority as his agent before then.[6] *See Braundmeier v. Ancestry.com Operations, Inc.*, No. 20 C 7390, 2022 WL 17176524, at *3 (N.D. Ill. Nov. 23, 2022) ("It strains logic to believe that a principal can authorize an action taken years prior to engaging the agent."). But PeopleConnect maintains that Mackey nonetheless subsequently ratified his agent's agreement to the TOS and is therefore bound by agency principals to arbitrate his claims.

"Ratification occurs when the principal learns of an unauthorized transaction [of the agent], then retains the benefits of the transaction or takes a position inconsistent with nonaffirmation." *Siena at Old Orchard Condo. Ass'n v. Siena at Old Orchard, L.L.C.*, 75 N.E.3d 420, 444 (Ill. App. Ct. 2017) (internal quotation marks omitted). "[T]he person ratifying secures a benefit through the actions of another who is acting on his behalf with apparent or implied authority." *Horwitz*, 816

---

[6] This record is distinguishable from *Knapke v. PeopleConnect, Inc.*, where the record did not clearly show whether a principal-agent relationship existed when counsel created a Classmates.com account and whether counsel did so within the scope of his authority. 38 F.4th 824, 834–35 (9th Cir. 2022). Nor did the record show whether the plaintiff-client knew about and acquiesced to her counsel's assent to the TOS on her behalf. *Id.* at 835–36. The Ninth Circuit vacated the district court's denial of PeopleConnect's motion to compel arbitration and remanded for further discovery on these issues. *Id.* at 836. Here, by contrast, the parties each submitted affidavits that provide sufficient facts to decide the motion.

N.E.2d at 280 (citing *Swader v. Golden Rule Ins. Co.*, 561 N.E.2d 99, 104 (Ill. 1990)). "For ratification to occur, the principal must, with full knowledge of the act, manifest an intent to abide and be bound by the transaction." *Cove Mgmt. v. AFLAC, Inc.*, 986 N.E.2d 1206, 1215 (Ill. App. Ct. 2013) (quoting *Gambino v. Boulevard Mortg. Corp.*, 922 N.E.2d 380, 413 (Ill. App. Ct. 2009)). "Ratification may be inferred from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an allegedly unauthorized transaction." *Id.* (quoting *Gambino*, 922 N.E.2d at 413)).

Here, PeopleConnect's argument that Mackey ratified by retaining the benefits of an agreement Osborn made nearly two years before they met hangs by a tenuous chain of logic. *First*, PeopleConnect argues that Osborn remains bound to the TOS regardless of which Classmates.com account he uses to access the site—including those for which he has opted out—because the agreement attaches to the individual rather than the account—making all subsequent accounts (and opt-outs) void. *Second*, PeopleConnect continues, Osborn bound his client to the TOS by accessing his Classmates.com account for any suit-related purpose after he was retained, because this falls within the scope of his apparent authority as his counsel. PeopleConnect's argument would extend to anyone connected to counsel who searched for Mackey on the site to perform a Rule 11 investigation of his claims. *Third*, although Mackey knew nothing of the TOS or any arbitration agreement between Osborn and PeopleConnect when he first retained Osborn, PeopleConnect imputes knowledge of this agreement and its "benefits" to Mackey when (1) the pre-suit letter was sent, and (2) he reviewed the Complaint. And *fourth*, by virtue of Osborn's filing the Complaint describing how Classmates.com uses his client's images, Mackey retained the "benefit" of Osborn's agreement to the TOS and thereby bound himself to arbitrate. Even assuming the first contention—that Osborn is still bound by his August 2019 agreement to the TOS because opt-outs

8

A8

for other accounts are void—this chain of reasoning contains several weak links when viewed against the factual record.

Initially, Osborn averred that he never searched for Mackey on Classmates.com, nor visited the site for any purpose related to his claims, after Mackey retained him. (Dkt. 55 ¶ 7). The record shows that someone searched for Scott Mackey on Classmates.com on January 5, 2022, six days before the pre-suit letter was sent and fifteen days before the Complaint was filed. (Dkt. 45-1 ¶ 24). The pre-suit letter also acknowledges that counsel—without specifying who—visited Classmates.com to conduct a Rule 11 investigation.[7] (Dkt. 1-3). Counsel made similar representations in other filings. (*See* dkt. 14-3 ¶ ("[W]e performed our investigation of Mr. Mackey's claims using an account for which counsel executed the exact procedures your client told the Ninth Circuit would retain the right to a judicial forum."); dkt. 38 at 5–6 ("Plaintiff's counsel opted out of the arbitration clause in the Classmates.com Terms of Service prior to visiting the website to verify that Plaintiff's name and photograph appear on the website.")). PeopleConnect submits that these representations establish that Osborn did use an account—from which he had never successfully opted out of the TOS—to search for Mackey on Classmates.com and thereby assented to the TOS as Mackey's agent within the scope of his representation. This argument falls short.

Again, Osborn denies ever visiting Classmates.com related to Mackey's claim to search for him. By its own terms, the arbitration agreement binds Osborn alone, when accessing the website for himself or on behalf of any others. (Dkt. 45-1 at 5 ("By accessing and using the

---

[7] Mackey submitted the affidavit of Samuel Strauss of Turke & Strauss LLP—also representing Mackey—averring that he directed a non-attorney staff member of his firm to search for Scott Mackey to confirm that his name and photograph appear on the site, and that this staff member was told not to visit any portion of the website that requires agreeing to the TOS. (Dkt. 56 ¶¶ 6–7). This affidavit, however, cannot establish what this unnamed staff did, only what Strauss told him or her to do. Its evidentiary value is limited.

Websites and Services *you* are agreeing to the following Terms of Service. . . . [I]f *you* access and use the Websites and Services on behalf of or for the benefit of another, you are also agreeing to these Terms of Service on their behalf . . . .")). It does not and cannot bind a non-member who has never agreed to the TOS, even when acting at the direction of a member. Mackey has provided evidence that Osborn did not search for Mackey and directed someone else on his team to do so. If that other person never agreed to the TOS and visited sections of the website that are accessible without assenting to the TOS, he or she is not bound by them and did not bind Mackey. Indeed, Mackey's explanation is plausible.

PeopleConnect contends that Mackey could not have alleged certain facts in his Complaint unless a Classmates.com member searched for him. (*See* dkt. 45-1 (citing dkt. 1 ¶¶ 5–8, 49, 50, 54–55)). But Mackey has shown otherwise: some of this information is accessible to non-member users. (*See* dkt. 1 ¶ 6). Other information about how Classmates.com generates advertisements is already publicly available, through prior filings in similar lawsuits with screenshots—all filed well before Mackey retained Osborn. (*See* dkt. 56-1 (*Callahan v. PeopleConnect, Inc.* Complaint); dkt. 56-2 (*Bonilla v. PeopleConnect, Inc.* Complaint); dkt. 56-3 (*Knapke v. PeopleConnect, Inc.* Complaint)). Finally, facts relevant to Classmates.com's use of Mackey's specific photograph in advertisements, accessible only to member-users, are pleaded on information and belief, based on the verification that Mackey's photograph appears in the free section of the site and on the general, publicly available knowledge of how Classmates.com functions. (*See* dkt. 1 ¶¶ 49–50, 54–55). It is entirely plausible that a non-member user, who visited only the non-member sections of Classmates.com, verified that Mackey's name and photograph appear on the site and helped construct the Complaint without ever searching for Mackey by accessing the site as a member.

Even if this did *not* happen, and someone—whether Osborn, another affiliated counsel, or counsel's staff—searched for Mackey after assenting to the TOS without successfully opting out of the arbitration agreement, counsel's undisclosed use of Classmates.com to conduct a Rule 11 investigation is not an action taken on behalf of his client that the client ratified by retaining its benefits. An attorney has an independent obligation to the Court under Rule 11 to conduct a reasonable investigation of the facts underlying a client's claims before pressing litigation to the point of seeking discovery. *Frantz v. U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1068 (7th Cir. 1987). To file a lawsuit without any independent investigation of the underlying facts exposes an attorney and his firm to sanctions. Several courts confronting this same issue have likewise found that an attorney's verification that his client's claims have some factual basis falls well short of conferring a "benefit" on that client. *See Callahan v. PeopleConnect, Inc.*, No. 21-16040, 2022 WL 823594, at *1 (9th Cir. Mar. 18, 2022) ("There is considerable doubt on this record that the Plaintiffs received any 'benefits' that would trigger ratification, such as a settlement or receipt of payment.").[8] PeopleConnect has failed to cite to any analogous case where a court has held that an attorney's independent verification of the factual basis of his client's claim was a "benefit" conferred by the very entity allegedly harming the client's interests. Its ratification argument falters

---

[8] *See also, e.g.*, *Callahan v. PeopleConnect, Inc.*, No. 20-cv-9203, 2021 WL 1979161, at *6 (N.D. Cal. May 18, 2021), *aff'd*, No. 21-16040, 2022 WL 823594 (9th Cir. Mar. 18, 2022) ("As a final point, it is worth noting that the actions of Plaintiffs' counsel here do not serve as the *basis* of Plaintiffs' claims—i.e., counsel's use of the Classmates.com website is not the factual predicate for Plaintiffs' claims. Rather, counsel's use of the website was undertaken as part of the investigation—an investigation consistent with counsel's Rule 11 obligations, and Plaintiffs' duty to plead with specificity a plausible claim . . . into whether Plaintiffs did, in fact, have claims against PeopleConnect. The Court is troubled by PeopleConnect's suggestion that a plaintiff's access to a judicial forum may be cut off simply because counsel for the plaintiff fulfilled a duty under Rules 11 and 12 to investigate prior to filing suit. Under PeopleConnect's position, Plaintiffs here would either file suit without doing the necessary pre-suit investigation, raising serious concerns, or would waive the right to a judicial forum, a right protected under the First Amendment."); *Boshears v. PeopleConnect, Inc.*, No. C21-1222, 2022 WL 888300, at *9 (W.D. Wash. Mar. 25, 2022) ("Nor is there any evidence that Boshears received any 'benefit' from his counsel's use of the Classmates' website, as counsel's use merely aided in the filing of a complaint and satisfying counsel's Rule 11 obligations."); *cf. Braundmeier*, 2022 WL 17176524, at *3 ("A contrary ruling—that a lawyer could unintentionally force clients into arbitration by conducting routine research—would disincentivize fact-checking and burden the litigation process by making lawyers either file complaints with unverified information or seek basic knowledge through onerous discovery.").

here. *See Horwitz*, 816 N.E.2d at 280 ("If there is no benefit, ratification will not be implied."). Although PeopleConnect contends that Mackey has benefited from its proprietary information—*i.e.*, how advertisements for its subscription services are generated—to "bolster" his claims, this knowledge was publicly available through filings in other lawsuits months before Mackey filed his Complaint.

Even if such a benefit was conferred, Mackey never knew any arbitration agreement had existed between PeopleConnect and Osborn before filing his lawsuit. He did not have "full knowledge of the act" that he supposedly ratified. *See Cove Mgmt.*, 986 N.E.2d at 1215. PeopleConnect argues that Mackey should have known about this arbitration agreement when (1) his counsel sent a pre-suit letter to PeopleConnect's counsel disclaiming any arbitration agreement existed, and (2) when he reviewed the Complaint prior to filing. But neither document contains any reference to Osborn's personal Classmates.com account that he opened in 2019. On the contrary, both documents would naturally have confirmed Mackey's belief that he had authorized his counsel solely to litigate in federal court rather than to arbitrate.

PeopleConnect seems to imply that Mackey should have suspected Osborn was hiding something from him, simply by twice declaring that no arbitration agreement existed that could bind Mackey. It suggests that Mackey was grossly negligent or willfully ignorant for failing to learn of the terms of his counsel's agreement after being on notice that such an agreement might exist. (*See* dkt. 45 at 8–10). PeopleConnect places a heavy burden on a non-attorney client by expecting him to suspect an arbitration agreement existed despite his counsel's assertions to the contrary. Such suspicion somehow further obligates the client to inquire into the specific provisions of an online clickwrap agreement that his counsel first entered into years before being retained.

Finally, after learning of Osborn's TOS agreement when PeopleConnect filed its motion, Mackey showed no intent to be bound by any arbitration provision, even had his counsel acted within the scope of his representation by searching for his name on Classmates.com during a Rule 11 investigation. *See Cove Mgmt.*, 986 N.E.2d at 1215 ("For ratification to occur, the principal must, with full knowledge of the act, manifest an intent to be bound by the transaction."). Mackey repudiated this agreement and averred that he never authorized his counsel to arbitrate his claims. This is consistent with his actions: litigating in federal court. To the extent that he inadvertently retained any purported "benefits" from his counsel's actions despite this express disavowal, he could not return such benefits after filing suit. *See Callahan*, 2022 WL 823594, at *1 ("[A]t the time the complaint was filed, there was no evidence Plaintiffs knew the arbitration agreement existed, that their counsel had executed it, or that they had a right to rescind it. By the time Plaintiffs were alerted to this information, any information derived from their counsel's use of the website had already been publicly filed and had become part of the litigation. At that stage, it was no longer possible for Plaintiffs to avoid 'accepting' any of these purported 'benefits.'").

This record is sufficient to show that Mackey has not ratified any agreement of his counsel to arbitrate claims against PeopleConnect. The Court needs no additional evidence, so it denies PeopleConnect's Motion to dismiss for improper venue under Rule 12(b)(3) and declines to order further discovery on arbitrability.

## B.     Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

### 1.   Compliance with Rule 8(a) Pleading Requirements

PeopleConnect argues that Mackey's Complaint fails to satisfy Rule 8(a). (Dkt. 45 at 13–16). Within the Complaint's 87 paragraphs, Mackey makes 12 allegations "on information and

13

belief," ten of which pertain to Classmates.com's use of his photo.[9] (*See* dkt. 1 ¶¶ 16, 28, 40, 49–56, 58). As discussed, Mackey's counsel conducted a Rule 11 investigation of his claims to verify that his name and photograph *do* appear on Classmates.com. But he did not include screenshots in his Complaint to avoid PeopleConnect's argument that this would "confer a benefit" on Mackey that would ratify any prior arbitration agreement Osborn made when he first created his Classmates.com account. (*Id.* ¶ 41). PeopleConnect now seeks to invalidate the Complaint as wholly inadequate because Mackey's counsel sought to preserve his client's rights and filed a Complaint that is both factually supported but did not require counsel to access Classmates.com through his membership account—an account which, according to PeopleConnect's position, counsel had no opportunity to opt out of to represent Mackey.

PeopleConnect attempts to stretch Rule 8's pleading requirements beyond their intended purpose. It cannot claim in good faith that it has insufficient notice of Mackey's claims. Nor can it state that Mackey has insufficient factual basis to allege how Classmates.com uses his photographs, when Mackey's counsel performed a Rule 11 investigation to verify that his photo appears on the website, and publicly available filings from prior lawsuits show how the website generates advertisements. Rather, by invoking Rule 8(a) in combination with its ratification argument, PeopleConnect aims only to box Mackey out of federal court altogether. PeopleConnect has made more specific information unavailable to him by default. *Cf. Callahan v. PeopleConnect, Inc.*, No. 20-cv-9203, 2021 WL 1979161, at *6 (N.D. Cal. May 18, 2021) (characterizing the "resulting policy dilemma created by PeopleConnect's position" as "being on the horns of a

---

[9] The Complaint also begins with the prefatory statement: "Plaintiff Scott Mackey, by and through his attorneys, makes the following allegations on information and belief, except as to factual allegations pertaining to Plaintiff, which are based on personal knowledge." (Dkt. 1 at 1). The Court agrees that this is somewhat vague, but the individual allegations in the Complaint nevertheless make clear these which are made "on information and belief."

dilemma, Hobson's choice, stuck between a rock and a hard place, or caught between Scylla and Charybdis").

The Court considers the information that Mackey pleads "on information and belief" to be within the defendant's unique control. *See Arista Records*, 604 F.3d at 120; *see also, e.g.*, *Frerck v. Pearson Educ., Inc.*, No. 11-cv-5319, 2012 WL 1280771, at *3 (N.D. Ill. Apr. 16, 2012) (recognizing as appropriate allegations pleaded on information and belief when defendant withheld information that plaintiff had asked for before suing, after plaintiff established basis for belief defendant possessed that information). Notwithstanding Mackey's allegations on information and belief, his Complaint satisfies Rule 8(a)'s notice-pleading standard.

### 2. Illinois Right of Publicity Act

Turning to the merits, PeopleConnect maintains that both Mackey's Illinois law claims are facially inadequate as pleaded. Further, it argues that federal law bars Mackey's claims altogether.

To state an IRPA claim, "the plaintiff must allege: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purpose." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022) (citing 765 Ill. Comp. Stat. 1075/30(a); *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. 2006)). The IRPA defines "commercial purpose" disjunctively as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Huston*, 53 F.4th at 1100 (citing 765 Ill. Comp. Stat. 1075/5).

### a)     Extraterritoriality

15

A15

Illinois law cannot be applied extraterritorially without clear intent from the statute's express provisions. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). While the parties dispute whether the IRPA was intended to extend outside of Illinois, the Court need not reach that question, because at this stage, Mackey sufficiently alleges in-state IRPA violations.

"[T]here is no single formula or bright-line test for determining whether a transaction occurs within" Illinois; the Court considers each case "on its own facts." *Id.* at 854. Deciding where a statutory violation occurs turns on whether the circumstances relating to the alleged conduct "occur primarily and substantially in Illinois." *Id.* The Court considers various factors, including the plaintiff's residence, the location of harm, communications between parties (where sent and where received), and where the defendant's policy is carried out. *See id.*

Here, Mackey is an Illinois resident, and the class he proposes includes current and former Illinois residents. PeopleConnect designed its website to allow users to focus their searches of yearbooks on Illinois schools, knowing that many alumni still live in Illinois. Mackey has alleged harms flowing from the nonconsensual appropriation of his and others' likenesses from Illinois school yearbooks. This harm occurs in Illinois when a current resident searches for a former classmate—whether that former classmate still lives in Illinois or not—and is presented with an advertisement in connection with that person's likeness. PeopleConnect's failure to obtain consent from Illinois residents before using their photographs occurred in Illinois. (Dkt. 1 ¶ 25). PeopleConnect's policy of displaying advertisements to users occurred on its website, "and thereby occurred nationally and thus necessarily in Illinois." *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479, at *11 (N.D. Ill. Mar. 31, 2022). Under these circumstances, the conduct underlying Mackey's allegations occurred primarily and substantially in Illinois. The claims do not require applying IRPA extraterritorially. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 &

n.7 (9th Cir. 2019) (explaining that a statute's "application to individuals who are located in Illinois, even if some relevant activities occur outside the state," is not extraterritorial).

PeopleConnect focuses its extraterritoriality argument on the location of Classmates.com users, who may or may not be in Illinois when shown Mackey's or a putative plaintiff's likeness. PeopleConnect states, without citation to legal authority, that "[t]he *sine qua non* of an IRPA violation is the publication of a person's identity to a third-party," so "the required in-state nexus is satisfied only if the person's identity was displayed to a Classmates.com user in Illinois." (Dkt. 45 at 16–17). But "third-party viewing is not an element of an IRPA claim." *Fischer*, 2022 WL 971479, at *11; *see also Huston*, 53 F.4th at 1099 (listing elements of an IRPA violation); *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 930 (Ill. App. Ct. 2013) (holding that a defendant's "holding out" for a commercial purpose means representing a plaintiff's identity in connection with the sale of a product, merchandise, goods, or services, without demonstrating publication to a third party as a required element). Although the user's location is one factor to consider in the extraterritoriality analysis, *Avery* suggests that "focusing solely" on this factor would "create questionable results" given other countervailing factors. 835 N.E.2d at 853; *accord Fischer*, 2022 WL 971479, at *11. Mackey alleges sufficient facts to show PeopleConnect's conduct relevant to his claims and those of other putative plaintiffs occurred primarily and substantially in Illinois.

Finally, whether circumstances related to PeopleConnect's conduct occurred primarily and substantially in Illinois is "a highly fact-based analysis that is generally inappropriate at the motion to dismiss stage." *Vance v. Int'l Bus. Machs. Corp.*, No. 20-cv-577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020) (applying extraterritoriality analysis to Illinois Biometric Information Privacy Act (BIPA)); *see also, e.g.*, *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *6 (N.D. Ill. Sept. 16, 2017) (declining to decide extraterritorial application of BIPA on motion to

dismiss with undeveloped factual record); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1102 (N.D. Ill. 2017) (concluding that plaintiffs had alleged sufficient facts to survive motion to dismiss but discovery might change calculus). Here, too, discovery may disclose additional facts showing IRPA's extraterritorial application, and the parties will have an opportunity to revisit their arguments.

### b)     Prima Facie IRPA Claim

#### i.     *Plaintiff Pleaded Public Use of His Identity*

PeopleConnect argues that Mackey fails to allege "the public use or holding out of [his] identity" that defines the commercial-use element of the IRPA claim. 765 Ill. Comp. Stat. 1075/5. According to PeopleConnect, to show "public use or holding out," Mackey must allege that a third party—other than someone connected with his lawsuit—viewed his name and photograph on Classmates.com. This is incorrect; the IRPA does not require third-party viewing, so Mackey need not allege anyone saw his image.

While the statute does not define "public use," several courts have indicated that publishing the plaintiff's identity online in connection with its advertisements satisfies this element. *See Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 929 (Ill. App. Ct. 2013) (noting that in context of the IRPA "the word 'public' is unambiguous and means the 'aggregate of the citizens' or 'everybody' or the 'people at large' or the community at large"); *Performance Mktg. Ass'n, Inc. v. Hamer*, 998 N.E.2d 54, 59 (Ill. 2013) (noting that publication of online marketing "is inherently national or international in scope and disseminated to a national or international audience"). By publishing Mackey's name and photograph online in connection with its services, PeopleConnect has disseminated them to an international audience; it has made a public use of Mackey's identity. Alternatively, even if Mackey has not adequately alleged "public use," he has alleged the "holding

out" of his image. "[T]he Act prohibits the holding out—meaning the representation—of an individual's identity on or in connection with certain activities." *Trannel*, 987 N.E.2d at 930. Mackey alleges that PeopleConnect represented his identity on its website in connection with advertisements for its subscription services. In both contexts, the statute focuses on the defendant's conduct—not the consequences of this conduct on third parties.

Several courts have rejected the argument that the IRPA requires a third party to perceive the plaintiff's appropriated identity to demonstrate the defendant has made a "public use" or "holding out" of it. *See Siegel v. Zoominfo Techs., LLC*, No. 21-cv-2032, 2021 WL 4306148, at *3–*4 (N.D. Ill. Sept. 22, 2021) (finding plaintiff sufficiently stated claim for relief by alleging website used identity in free previews to advertise, promote, and offer subscription sales, without alleging specific third-party viewership); *Fischer*, 2022 WL 971479, at *10 ("[H]ow many (if any) [defendant website] users saw a putative class member's search result or SEO Directory profile is immaterial to whether [defendant] violated the IRPA by holding out that person's identity in connection with the offering for sale of its services."). Moreover, the common-law tort of the appropriation of name or likeness, which the IRPA codified in Illinois, *see Trannel*, 987 N.E.2d at 928, includes no element of third-party viewership. *See* Restatement (Second) of Torts § 652C (Am. L. Inst. 1977) ("One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of privacy."). Moreover, PeopleConnect has cited to no legal authority establishing that the IRPA requires third-party viewing. The Court is not persuaded by its unsupported proposition.

### ii. *Plaintiff Pleaded Use of Identity for Commercial Purpose*

19

Next, PeopleConnect argues that Mackey has failed to plausibly allege the use of his identity "for a commercial purpose" such as "for purposes of advertising" and "in connection with the offering for sale or sale" of goods or services. This argument likewise falls short.

The IRPA "contemplates a use or holding out of an individual's identity with the aim of effectuating a sale." *Huston*, 53 F.4th at 1101. Mackey has alleged that (1) Classmates.com provides a publicly accessible webpage where users can search for him, (dkt. 1 ¶ 51); (2) users who search for Mackey are shown low-resolution photographs of him, (*id.* ¶ 52); (3) users who click on Mackey's low-resolution photograph receive a pop-up message asking the user to register with the site, (*id.* ¶ 53); (4) after registering, the website solicits the purchase of a paid subscription, (*id.* ¶ 54); and (5) next to search results containing Mackey's photographs, the website displays banner ads soliciting the purchase of a subscription, (*id.* ¶ 55). Classmates.com solicits the purchase of its subscription services by using Mackey's image as part of its advertising flow logic. In other words, it uses or holds out Mackey's identity to sell its product. *See Huston*, 53 F.4th at 1101.[10]

PeopleConnect relies on factual affidavits to rebut Mackey's allegations. (*See* dkt. 45 at 18–19). But at the motion-to-dismiss stage, the Court must accept as true all well-pleaded facts in the Complaint. *Gociman*, 41 F.4th at 878. Materials inconsistent with the Complaint should not be considered on a Rule 12(b)(6) motion. *See Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348,

---

[10] *See also, e.g.*, *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1030 (D. Nev. 2021) ("Plaintiffs' names and images are allegedly contained in Ancestry's Yearbook Database. If a prospective subscriber searches for Plaintiffs' names and tries to click through to their information, a limited access user is presented with an advertisement to purchase a subscription. The advertising indicates that Ancestry is trading off the value of customers searching for Plaintiffs' names in order to entice them into purchasing a subscription."); *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020) ("The complaint alleges that Whitepages used Lukis's identity . . . in free previews used to advertise, promote, and offer for sale its monthly subscription services. That is a textbook example under the IRPA of using a person's identity for a commercial purpose."); *Siegel*, 2021 WL 4306148, at *3 (holding plaintiff stated IRPA claim where website generated a "preview page" in response to search with plaintiff's identifying information, prompts user to register for a free account to access more, and then advertised paid subscriptions).

354 (7th Cir. 2017) (discussing impropriety of considering exhibits outside the pleadings at motion-to-dismiss stage). It is premature to consider PeopleConnect's factual defenses to Mackey's claims.

Additionally, PeopleConnect relies on two inapposite cases. In the first case, *Thompson v. Getty Images (US), Inc.*, the court dismissed an IRPA claim because the defendant sold photos of the plaintiff himself and did not use "[plaintiff's] photographs in connection with an offer to sell or a sale of *some other* product, merchandise, good, or service as contemplated by the statute." No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (emphasis added). PeopleConnect argues the situation here is analogous, because Classmates.com displays a preview of the exact thing PeopleConnect seeks to sell—yearbook excerpts. But Mackey has alleged that PeopleConnect uses his identity to sell subscriptions to Classmates.com, which includes such services as "access to full-resolution student photographs from hundreds of thousands of yearbooks; visibility into who has visited the subscriber's profile; and the ability to read and reply to messages sent by other subscribers." (Dkt. 1 ¶ 12). A Classmates.com subscription thus constitutes a separate product or service from the yearbook excerpts.

Likewise, in *Dobrowolski v. Intelius, Inc.*, the court dismissed an IRPA claim after concluding that the defendant did not use plaintiffs' identifies for a commercial purpose. No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018). But as the court explained in *Lukis*,

> the defendants [in *Dobrowolski*] used the free previews to advertise only background reports regarding the person identified in the preview. . . . Here, by contrast, Whitepages used Lukis's identity to advertise not a background report regarding *Lukis*, but a monthly subscription service giving the purchaser access to background reports on anybody in Whitepages's database. Thus, Lukis's identity was not part and parcel of the entire product or service being advertised, meaning that Whitepages's use of her identity had a commercial purpose . . . .

21

A21

*Lukis*, 454 F. Supp. 3d at 760–61. As in *Lukis*, Mackey here alleges PeopleConnect uses his likeness to sell not just his own yearbook image and personal information, but subscriptions to Classmates.com that incorporate additional services. Mackey sufficiently alleges that PeopleConnect uses his likeness for a commercial purpose.

### iii.     *Incidental-Use Doctrine Does Not Apply in Illinois*

Next, PeopleConnect argues that any alleged public use or holding out of Mackey's identity is too attenuated to support an IRPA claim. (Dkt. 45 at 21–22). PeopleConnect points to *Bogie v. Rosenberg*, where the Seventh Circuit interpreted Wisconsin's right-of-publicity statute and held that the use of the plaintiff's image was "de minimus" and thus fell within the incidental-use exception under Wisconsin law. 705 F.3d 603, 615–16 (7th Cir. 2013). But PeopleConnect also concedes that the Illinois Supreme Court has not adopted the incidental-use exception. (Dkt. 45 at 21 n.12). Indeed, it fails to cite any Illinois caselaw importing this common-law doctrine into interpretation of Illinois's statute. Federal courts interpreting state law must proceed cautiously in the absence of state supreme court guidance, for "federal court pronouncements on the content of state law inherently involve a significant intrusion on the prerogative of the state courts to control that development." *Wagner-Meinert Eng'g, LLC v. TJW Indus., Inc.*, 587 F. Supp. 3d 744, 749 (N.D. Ind. 2022) (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999)). Because Illinois law does not currently recognize the incidental-use exception in interpreting the IRPA, the Court declines to apply it here.

### iv.     *Plaintiff Did Not Consent to Use of His Image*

PeopleConnect also contends that Mackey cannot state an IRPA claim because he consented to the use of his likeness on Classmates.com by ratifying his counsel's consent to the TOS. But as explained, Mackey has not ratified his counsel's consent to the TOS. His Complaint

alleges that he never consented to PeopleConnect's use of his name, photographs, or persona to promote Classmates.com subscriptions. (Dkt. 1 ¶ 4). At this stage, no more is required to satisfy the lack-of-consent element in Mackey's IRPA claim.

### v.      Statute of Limitations

Finally, in supplemental briefing, PeopleConnect argues that Mackey's IRPA claim is time barred under the one-year statute of limitations. (Dkt. 66 at 4–5). This Court held in *Bonilla v. Ancestry.com* that the plaintiff could not maintain his IRPA claim against Ancestry.com when Ancestry began hosting his yearbook image on June 17, 2019, and the plaintiff filed his complaint on December 14, 2020. No. 20 C 7390, 2022 WL 4291359, at *1 (N.D. Ill. Sept. 16, 2022). Because the IRPA does not expressly provide a statute of limitations and the Illinois Supreme Court has not ruled on the matter, this Court followed guidance from the Illinois appellate courts concluding that the one-year statute of limitations imported from the common-law tort applied to the statute. *See id.* at *2 (citing *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006)).

But the Court in *Bonilla* ruled for defendants at summary judgment, not on a motion to dismiss. *See id.* A statute-of-limitations defense is not normally part of a motion under Rule 12(b)(6) and only appropriate where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). Here, Mackey's Complaint alleges no facts that allow the Court to determine whether the affirmative defense is satisfied. The Complaint does not allege when Mackey's yearbook photograph was added to Classmates.com, when it was integrated into the advertising display

23

logic, or whether PeopleConnect altered or changed it in any way since the original publication, among other relevant facts. The statute-of-limitations defense requires further factual development and the benefit of full briefing before it becomes dispositive in this case.

### 3. Unjust Enrichment

The parties agree that the unjust-enrichment claim rises and falls with the related IRPA claim. (Dkt. 45 at 23; dkt. 53 at 24). *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."). Mackey has sufficiently pleaded his IRPA claim; therefore, his unjust-enrichment claim likewise survives at this stage.

### C.    Federal Law Does Not Bar Mackey's IRPA Claim

In addition to its facial challenges to Mackey's IRPA claim, PeopleConnect argues that his claims are barred by the First Amendment, the Dormant Commerce Clause, the Communications Decency Act, and Copyright Act preemption. The Court disagrees on each count.

### 1. First Amendment

PeopleConnect characterizes Mackey's IRPA claim as an attack on constitutionally protected speech. This characterization hinges on PeopleConnect's assertion that Mackey objects to PeopleConnect's business selling republished yearbooks and yearbook excerpts, which happen to contain his likeness.[11] But this is not a fair reading of the Complaint. Mackey does not object to PeopleConnect's sale of republished yearbooks or excerpts from those yearbooks. He claims that

---

[11] *See, e.g.*, dkt. 45 at 23 ("Plaintiff's efforts to prevent PeopleConnect from disseminating yearbooks is an attack on constitutionally protected speech."); *id.* ("The yearbooks and yearbook excerpts Plaintiff contests easily qualify as core constitutionally protected speech."); *id.* at 24 ("As Plaintiff's Complaint makes clear, the materials he seeks to suppress are a source of information and interest for millions of readers."); *id.* ("Plaintiff's proposed application of IRPA to protected First Amendment speech amounts to a content-based restriction, to which strict scrutiny applies.").

Classmates.com has misappropriated his likeness with the aim of selling its subscription services. (*See* dkt. 1 ¶¶ 5–10, 15, 21, 49–56; *see also id.* ¶ 12 ("A Classmates.com subscription includes far more than access to the photographs Classmates used to advertise the subscription.")). This distinction is critical to evaluating PeopleConnect's First Amendment argument.

"[T]he degree of protection afforded by the First Amendment depends on whether the activity sought to be regulated constitutes commercial or non-commercial speech." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983). Commercial speech is afforded a lesser degree of protection than noncommercial, or "core" First Amendment speech. *Id.* at 66 (citing *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)); *see also Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 515 (7th Cir. 2014). Commercial speech "does no more than propose a commercial transaction." *Id.* (cleaned up and internal citations omitted); *see also United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). Guideposts for classifying speech containing both commercial and noncommercial elements include "whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *Jordan*, 743 F.3d at 517; *see also Bolger*, 463 U.S. at 66–67. But speech loses its commercial character "when it is inextricably intertwined with otherwise fully protected speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988).

Here, the speech at issue is clearly commercial. Mackey alleges that after a user clicks on his photograph, the user is prompted to register for a Classmates.com account. Thereafter, the page generates an advertisement encouraging the user to purchase a Classmates.com subscription. Even taking PeopleConnect's point that the yearbook excerpts included in the full subscription access to Classmates.com have expressive value under the First Amendment, the website advertises a more expansive product: its subscription services. These include "access to full-resolution student

photographs from hundreds of thousands of yearbooks; visibility into who has visited the subscriber's profile; and the ability to read and reply to messages sent by other subscribers." (Dkt. 1 ¶ 12). The latter two services, at least, constitute a product specific to Classmates.com rather than mere access to expressive content. Such services are not "inextricably intertwined" with access to yearbook excerpts; Classmates.com need not offer these additional services at all to further its commercial purpose. *Cf. Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989) (reasoning that commercial speech is not "inextricably intertwined" with noncommercial speech in sales pitches for housewares that also teach home economics—the one does not necessitate the other). By selling these services, PeopleConnect has an economic motivation for its speech. Several other courts have concluded the same in nearly identical cases. *See, e.g.*, *Boshears*, 2022 WL 888300, at *10–*11; *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 879 (W.D. Wash. Aug. 10, 2021), *rev'd on other grounds*, 38 F.4th 824 (9th Cir. 2022).

The Court applies intermediate scrutiny in commercial-speech cases. *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989)). The Court asks: "(1) whether the speech concerns lawful activity and is not misleading; (2) whether the asserted governmental interest is substantial; (3) whether the regulation directly advances the governmental interest asserted; [and] (4) whether it is not more extensive than is necessary to serve that interest." *Pearson v. Edgar*, 153 F.3d 397, 401 (7th Cir. 1998) (citing *Cent. Hudson Gas & Electric Corp.*, 447 U.S. at 566) (cleaned up). The first prong of this analysis dictates whether the speech is entitled to protection at all. *See F.T.C. v. Trudeau*, 662 F.3d 947, 953 (7th Cir. 2011) ("[M]isleading commercial speech gets no constitutional protection."). As alleged here, PeopleConnect's speech is not entitled to protection because it misleads the public into believing that Mackey and other putative class members "are

Classmates.com users who willingly shared their personal information with Classmates.com and endorse Classmates.com's subscription product." (Dkt. 1 ¶ 9). This suffices at the motion-to-dismiss stage.

Even if the speech were not misleading, Mackey's IRPA claim here survives intermediate scrutiny. "[T]he purpose of the IRPA is to allow a person to control the commercial value of his or her identity." *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005). PeopleConnect has not challenged the facial constitutionality of the IRPA, nor Illinois's substantial government interest in protecting the value of a person's identity.[12] PeopleConnect's sole argument that the IRPA as applied in Mackey's case fails intermediate scrutiny is that "there is no 'reasonable fit' between IRPA's aim—preventing unauthorized commercial endorsements—and barring PeopleConnect's publication of yearbook excerpts that identify persons included in yearbooks." (Dkt. 45 at 27). But once again, that is not what Mackey objects to. He claims that PeopleConnect *does* use his likeness in a manner that appears to endorse its product. His claim precisely fits the IRPA's objective. PeopleConnect's First Amendment argument is baseless.

### 2. Dormant Commerce Clause

PeopleConnect next argues that the IRPA as applied in Mackey's claim violates the dormant Commerce Clause. It does not.

Congress regulates interstate commerce. U.S. Const. art. I, § 8, cl. 3. The Commerce Clause "presumes a national market free from local legislation that discriminates in favor of local interests.'" *Regan v. City of Hammond*, 934 F.3d 700, 702 (7th Cir. 2019) (quoting *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 393 (1994)). As a corollary to Congress's authority to

---

[12] Had PeopleConnect presented a facial challenge to the IRPA's constitutionality, it would have had to file a notice of constitutional question and served it on the Illinois Attorney General. Fed. R. Civ. P. 5.1. PeopleConnect has not done so.

regulate interstate commerce, state and local governments are precluded from "erecting obstacles to interstate commerce even where Congress has not regulated." *Id.* (citing *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459–61 (2019)). But "[t]he fact that a state or municipal law affects interstate commerce in some way is by itself insufficient to render the law suspect under the commerce clause, as almost any local regulation is bound to touch upon interstate commerce." *Id.* (citing *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1130–31 (7th Cir. 1995)). "Dormant Commerce Clause doctrine applies only to laws that *discriminate* against interstate commerce, either expressly or in fact." *Id.* (quoting *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017) (emphasis in original)). In other words, the regulation must somehow burden out-of-state economic actors more than in-state actors. *See Park Pet Shop, Inc.*, 872 F.3d at 501–02.

PeopleConnect makes no argument that the IRPA as applied here treats PeopleConnect as an out-of-state company differently from an in-state company. Nor could it. The IRPA prohibits all companies—regardless of where located—from appropriating someone's likeness for commercial purposes without consent. It regulates business conduct within Illinois, but it burdens all economic actors alike; a local company has no more freedom to appropriate Mackey's image to sell its products than PeopleConnect. Nor has PeopleConnect indicated that the IRPA as applied disparately impacts out-of-state companies. Even if Mackey's IRPA claim "touch[es] upon interstate commerce" by requiring all companies to obtain consent before using a person's likeness to sell products, it has posed no obstacle to transacting business that discriminates against out-of-state companies. *Regan*, 934 F.3d at 702; *see also Park Pet Shop, Inc.*, 872 F.3d at 502 (dormant Commerce Clause does not come into play for ordinance that neither expressly discriminates nor

causes disparate impact on out-of-state business owners). Accordingly, PeopleConnect's argument that Mackey's claim violates the dormant Commerce Clause fails.

### 3. Communications Decency Act

PeopleConnect next claims immunity from Mackey's claims under Section 230 of the Communications Decency Act. But Section 230 does not provide PeopleConnect a safe harbor on the facts as alleged here.

The Communications Decency Act states, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1); *Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016). It defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." § 230(f)(3). Section 230 shelters companies from liability when they act as "a mere passive conduit" for publishing others' actionable content. *See Huon*, 841 F.3d at 741. But companies can be liable "for creating and posting . . . or otherwise actively participating in the posting of [an actionable] statement in a forum that the company maintains." *Id.* (citing *Chi. Laws.' Comm. For Civ. Rts. Under L., Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008); *see also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1166–67 (9th Cir. 2008) (en banc) (concluding that website was not a "passive transmitter of information provided by others" but helped develop information); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1199–1200 (10th Cir. 2009) (concluding that a website was also content creator and not mere conduit). Dismissal based on CDA immunity is proper only when the complaint's factual allegations unambiguously establish all the elements of the defense. *Bonilla*, 574 F. Supp. 3d 582, 592 (N.D. Ill. 2021).

29

A29

Mackey alleges that PeopleConnect creates content because it integrates his yearbook photo into its advertising to sell subscription services. (*See* dkt. 1 ¶¶ 5–8, 13–14, 51–56; *see also* ¶ 13 ("PeopleConnect is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. PeopleConnect does not host user-generated content on any part of the Classmates website relevant to this lawsuit. PeopleConnect is the sole curator, designer, and creator of the content described in this Complaint.")). This contrasts with PeopleConnect's attempts to characterize Classmates.com as a mere publisher of yearbook excerpts. (*See, e.g.*, dkt. 57 at 14 ("Here, plaintiff's claims depend solely on the presentation of yearbooks and yearbook excerpts that PeopleConnect played no role in creating." (citing McGuane Decl. ¶ 10))). But this factual affirmative defense is not properly before the Court at the motion-to-dismiss stage.

This Court found the same in *Bonilla*. 574 F. Supp. 3d at 592. PeopleConnect attempts to distinguish *Bonilla*, noting that defendant Ancestry.com created content by sending marketing emails to registered users that integrated the plaintiff's photo. But, considering similar allegations, this Court concluded in *Bonilla* "that non-users are shown a limited version of the record (including a low-resolution photograph) with a promotional pop-up advertisement promising access to Plaintiff's identity and likeness if they sign up for a paid subscription." *Id.* Mackey's claims are nearly identical. Here, as in *Bonilla*, Mackey has alleged that Classmates.com "collected and organized records and subsequently used Plaintiff's and the putative class members' names, likenesses, and identities in these records they curated for commercial gain." *Id.* Thus, PeopleConnect cannot invoke CDA immunity at this stage.[13]

---

[13] *Accord Callahan v. PeopleConnect, Inc.*, No. 20-cv-9203, 2021 WL 5050079, at *8 n.7 (N.D. Cal. Nov. 1, 2021) ("[T]here would also appear to be a question of fact as to whether PeopleConnect should be deemed a developer of information itself—i.e., not just a mere service provider—to the extent it was not simply republishing yearbook photographs and/or information."); *Knapke*, 553 F. Supp. 3d at 875 ("The offending content is generated by

### 4. Copyright Act Preemption

Finally, PeopleConnect posits that federal copyright law preempts Mackey's IRPA claim. The Court disagrees.

The Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). But not every claim that involves a copyright falls within the Copyright Act's ambit. *See Nova Design Build, Inc. v. Grace Hotels, LLC*, 652 F.3d 814, 816 (7th Cir. 2011).

*Toney v. L'Oreal* is instructive. There, the Seventh Circuit analyzed whether federal copyright preemption applied to the IRPA claim of a plaintiff whose photograph was used on a product without her consent. 406 F.3d at 908–09. The court explained that the right-of-publicity act would not be preempted when the defendant used the plaintiff's persona or identity for a commercial purpose. The court explained,

> Toney's identity is not fixed in a tangible medium of expression. There is no "work of authorship" at issue in Toney's right of publicity claim. A person's likeness—her persona—is not authored and it is not fixed. The fact that an image of the person might be fixed in a copyrightable photograph does not change this. From this we must also find that the rights protected by the IRPA are not "equivalent" to any of the exclusive rights within the general scope of copyright that are set forth in § 106. Copyright laws do not reach identity claims such as Toney's. Identity, as we have described it, is an amorphous concept that is not protected by copyright law; thus, the state law protecting it is not preempted.

---

Classmates and the advertisement is not merely some passive display of content created by another entity, even if it contains a picture from a school yearbook. In this context, Classmates is the content creator and not entitled to immunity under the CDA."); *Boshears*, 2022 WL 888300, at *12 ("The sole issue in this case is whether Classmates' decision to create advertisements using Boshears' persona to sell subscription services violates the IRPA and the common law. That content is generated expressly by Classmates and the advertisement is not merely a passive display of content created by another entity, even if it contains a picture from a school yearbook. In this context, Classmates is the content creator and is not entitled to immunity under the CDA.").

*Id.* at 910. The same is true for Mackey's claims under the IRPA. He alleges that PeopleConnect uses his persona and identity—which do not make up an authored, fixed work—for a commercial purpose, to sell its subscription services. (*See* dkt. 1 ¶¶ 4–12). This claim falls outside the scope of federal copyright law. *See Toney*, 406 F.3d at 910–11; *see also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 666 n.24 (7th Cir. 1986) ("A player's right of publicity in his name or likeness would not be preempted if a company, without the consent of the player, used the player's name to advertise its product . . . .").

In sum, federal law does not bar Mackey's IRPA claim as pleaded.

### CONCLUSION

For these reasons, the Court denies PeopleConnect's Rule 12(b)(3) Motion and its Rule 12(b)(6) Motion to dismiss. [44]

Virginia M. Kendall
United States District Judge

Date: March 17, 2023

32

A32